NOTICE:  All slip opinions and orders are subject to formal
revision and are superseded by the advance sheets and bound
volumes of the Official Reports.  If you find a typographical
error or other formal error, please notify the Reporter of
Decisions, Supreme Judicial Court, John Adams Courthouse, 1
Pemberton Square, Suite 2500, Boston, MA, 02108-1750; (617) 557-
1030; SJCReporter@sjc.state.ma.us

SJC-12114

COMMONWEALTH  vs.  JOEL D. MORGAN.


Middlesex.      December 6, 2016. - April 18, 2017.

Present (Sitting at Lawrence):  Gants, C.J., Botsford, Lenk,
Hines, Gaziano, Lowy, & Budd, JJ.[1]


Veteran.  Motor Vehicle, Operating under the influence.
    Controlled Substances.  Practice, Criminal, Continuance
    without a finding, Dismissal.



    Complaint received and sworn to in the Lowell Division of
the District Court Department on October 3, 2014.

    A motion for pretrial diversion was heard by Barbara S.
Pearson, J., and questions of law were reported by her to the
Appeals Court.

    The Supreme Judicial Court granted an application for
direct appellate review.


    Melissa Weisgold Johnsen, Assistant District Attorney, for
the Commonwealth.
    Elizabeth Hugetz, Committee for Public Counsel Services
(Benjamin H. Keehn, Committee for Public Counsel Services, also
present) for the defendant.

---

    [1] Justice Botsford participated in the deliberation on this
case prior to her retirement.

<u>John C. Mooney</u>, for John C. Mooney & another, amici curiae, submitted a brief.

LENK, J. This case comes to us on two reported questions and calls upon us to construe for the first time the so-called VALOR Act, St. 2012, c. 108, entitled "An Act relative to veterans' access, livelihood, opportunity and resources." The VALOR Act was enacted in 2012 in the aftermath of protracted American military engagements in Afghanistan and Iraq. In recognition of the toll thereby taken on many who served in the military, the VALOR Act, among other things, amended the statute providing young adults with pretrial diversion, G. L. c. 276A (pretrial diversion statute), to include qualifying veterans and active duty members of our armed forces facing criminal charges in the District and Boston Municipal Courts.

We address first whether, under the pretrial diversion statute, as amended by the VALOR Act, a judge is authorized to dismiss or to continue such charges without a finding upon a defendant's successful completion of an approved pretrial diversion program. We conclude that the judge is so authorized, rejecting the Commonwealth's view that the VALOR Act amendments permit only a continuance of court proceedings, on the flawed view that, while military defendants could seek treatment through court-approved programs, they would face resumed prosecution of the charged offenses even after the successful

completion of such a program.

We go on to address the reported questions and consider whether the pretrial diversion statute, as amended by the VALOR Act, permits a judge to continue without a finding (CWOF) or to dismiss a charge of operating a motor vehicle while under the influence of alcohol or drugs (OUI), second or subsequent offense, notwithstanding the provisions of G. L. c. 90, § 24, which generally proscribe such dispositions.  Our analysis of this question ultimately turns on the legislative intent of the VALOR Act and its multifaceted approach to assisting members of the military in their often-difficult return to civilian life, during which many succumb to substance abuse.  We conclude that, notwithstanding otherwise applicable constraints on alternative dispositions that the preexisting OUI statute imposes, the pretrial diversion statute, as amended in 2012 by the VALOR Act, vests judges with discretion to order either of the two alternative dispositions at issue in appropriate cases that involve charges of OUI, second or subsequent offense.  We accordingly answer both reported questions[2] in the affirmative.[3]

---

[2] See part 1, infra, for the full text of the reported questions.

[3] We acknowledge the amicus brief submitted by John C. Mooney and Disabled American Veterans Department of Massachusetts, Inc., in support of the defendant, Joel D. Morgan.

1.  Background.  We set forth the relevant facts, which are largely undisputed.[4]  The defendant, Joel D. Morgan, is a veteran of the United States Army, in which he served from 2002 to 2011.  During his last four years of service, he completed three consecutive tours of duty, two in Iraq and one in Afghanistan.  As early as the first of these deployments, he began to experience symptoms of posttraumatic stress disorder (PTSD), and by the time he returned from his final tour of duty in Afghanistan in 2011, his untreated symptoms had significantly worsened.  He also had numerous physical disabilities as the result of injuries received during his tours of duty.[5]

Immediately upon returning from Afghanistan, Morgan sought mental health treatment through the United States Department of Veterans Affairs (VA), but the VA was unable to schedule an intake appointment for four months.  While awaiting evaluation and treatment, Morgan began to self-medicate by abusing alcohol and opioids.  In January, 2012, he was evaluated and was diagnosed with PTSD.  In the fall of 2012, the VA also determined that Morgan was one hundred per cent disabled.  On Veteran's Day, in November, 2012, Morgan's identical twin

---

[4] Because no evidence was taken, the facts consist largely of the statements in the police incident report and the undisputed submissions of the parties.

[5] Morgan's son was born during his final deployment.  Morgan and his wife are divorced.

brother, himself a veteran of the wars in Iraq and Afghanistan, who suffered from PTSD and a traumatic brain injury, committed suicide. The impact of his twin's suicide on Morgan's efforts to return to ordinary civilian life was considerable.

In April, 2013, Morgan entered a short-term detoxification program at a VA hospital in Bedford. Immediately after release from that program, he entered an intensive outpatient program, but completed only one month. In July, 2013, Morgan visited his mother, who had moved to California, and he successfully completed a two-month residential treatment program there. He thereafter relapsed.

On September 29, 2014, Morgan was driving erratically on Interstate 495 in Tewksbury when his vehicle swerved into another lane and hit the side of a tow truck. Morgan did not stop to exchange insurance information at the scene. The tow truck driver telephoned police and reported the incident; he also said that he had observed a Toyota (later identified as Morgan's) driving very erratically for ten miles before the accident. Morgan continued driving until he was stopped by a State police trooper in Boxborough, who had been alerted by the truck driver's report, and who observed Morgan still driving erratically.

When stopped, Morgan appeared to be under an intoxicating influence; he was disheveled and sweating, with glassy eyes and

slurred speech.  Dried blood and needle marks were visible on his left arm.  The trooper who conducted the stop called for backup, and ultimately was joined by four other troopers. Morgan informed one of the troopers that he had heroin and a hypodermic needle in his possession, and those items were taken into police custody.  Morgan was arrested and driven to the State police barracks for booking.  He waived his Miranda rights and agreed to be evaluated by a drug recognition specialist, who concluded that Morgan was exhibiting signs of opioid use. Police found drug paraphernalia in the vehicle near the driver's seat, including plastic bags, a bottle cap, and two hypodermic needles.

The following week, Morgan was arraigned in the District Court on charges of OUI, second offense; possession of heroin; negligent operation of a motor vehicle; and leaving the scene of property damage.  When his attorney later learned that Morgan was a veteran, she sought pretrial diversion under the VALOR Act.  He was evaluated by the VA, which determined that he would benefit from such a program.

At different VA medical centers, Morgan underwent detoxification, received specialized PTSD counselling for the first time, and also began supportive counselling for substance

abuse, in conjunction with monthly Naltrexone[6] injections.  He

passed a union examination, joined a local carpenters union, and

has maintained employment as a carpenter.[7]

Three months after arraignment, in January, 2015, Morgan

filed a motion, pursuant to the pretrial diversion statute,

seeking dismissal of all charges should the pretrial diversion

program prove successful.  In the alternative, he sought to

admit to sufficient facts and have the case continued without a

finding.  The prosecutor opposed both dispositions, contending

that, given the terms of the OUI statute, G. L. c. 90, §§ 24

and 24D, the judge could not continue a second offense[8] without a

---

[6] Naltrexone helps treat opioid addiction by blocking opioid receptors in the body, but carries no risk of abuse or illicit resale.  See Substance Abuse and Mental Health Services Administration, https://www.samhsa.gov/medication-assisted-treatment/treatment/naltrexone [https://perma.cc/LVS4-ZT3F].

[7] In support of his motion to report questions of law, Morgan executed an affidavit in July, 2015, stating that he had not consumed alcohol or drugs since his arrest.  Morgan's counsellors also submitted affidavits and letters in support of the motion, stating that he has maintained sobriety and employment, has made significant progress in treatment, was providing for his son, and was taking steps to restore family relationships.  Morgan's attorney also submitted a letter from her investigator stating that the tow truck driver, himself a veteran, had told the investigator that he did not want Morgan to "end up with a criminal conviction over this," so long as Morgan receives the help he so "desperately needs."

[8] In December, 2004, approximately nine years and ten months prior to the incident at issue here, Morgan admitted to sufficient facts to warrant a finding that he had operated a motor vehicle while under the influence of alcohol or drugs

finding. He also maintained that, in any event, the pretrial diversion statute did not permit a judge to dismiss a case involving a veteran or active duty member of the military and that, absent statutory authorization, such dismissal, over the Commonwealth's objection, infringed on the separation of powers.[9] See art. 30 of the Massachusetts Declaration of Rights; Commonwealth v. Cole, 468 Mass. 294, 301 & n.10 (2014).

Acknowledging that the case presented an unsettled question of law, the judge reported the following two questions to the Appeals Court, pursuant to Mass. R. Crim. P. 34, as amended, 442 Mass. 1501 (2004):

---

(OUI). The case was continued without a finding and dismissed upon his successful completion of probation. Although Morgan did not have a prior criminal conviction at the time of the 2014 incident, because ten years had not elapsed since December, 2004, he was not eligible for another continuance without a finding under the terms of the OUI statute. Where a defendant previously was "assigned to an alcohol or controlled substance education, treatment or rehabilitation program [by a court] because of" operating while under the influence, a subsequent OUI charge "shall not be placed on file or continued without a finding," unless the defendant was convicted or assigned to a treatment program at least ten years previously; this exception shall apply only "once in his [or her] lifetime." See G. L. c. 90, §§ 24 & 24D, second par. Otherwise put, had at least ten years elapsed between the resolution of the 2004 matter and the 2014 incident, Morgan would have been eligible for a continuance without a finding upon successful completion of a court-approved program under the terms of the OUI statute itself, quite apart from the pretrial diversion statute, as amended by the VALOR Act. The question before us arises because of his ineligibility under the OUI statute.

[9] The prosecutor did not oppose an admission to sufficient facts and a continuance without a finding on the other charges.

1.   "Under the VALOR Act, may a judge exercise discretion to enter a CWOF after an admission to an OUI-second offense?"

2.   "If a CWOF is not available, may a court dismiss the charge upon successful completion of diversion, over the Commonwealth's objection?"

We allowed Morgan's application for direct appellate review.

2.   Statutory background.   Two statutes are relevant to our consideration of the reported questions.   We set forth each in pertinent detail.

a.   Pretrial diversion statute, G. L. c. 276A.   In 1974, the Legislature inserted c. 276A into the General Laws by enacting St. 1974, c. 781, "An Act establishing a district court procedure to divert selected offenders from the district courts to programs of community supervision and service."   As initially enacted, the statute provided for pretrial diversion to a program, followed by dismissal or a continuance without a finding, for young adults who were at least eighteen, but not yet twenty-two years old.

> "The district courts, and in Boston, the municipal court of the city of Boston, shall have jurisdiction to divert to a program . . . any person who is charged with an offense or offenses against the [C]ommonwealth for which a term of imprisonment may be imposed and over which the [D]istrict [C]ourts may exercise final jurisdiction and who has reached the age of [eighteen] years but has not reached the age of twenty-two, who has not previously been convicted of a violation of any law of the [C]ommonwealth or of any other [S]tate or of the United States in any criminal court proceeding after having reached the age of [eighteen] years, . . . who does not have any outstanding warrants, continuances, appeals or criminal cases pending

before any courts of the [C]ommonwealth or any other [S]tate or of the United States, and who has received a recommendation from a program that he would, in light of the capacities of and guidelines governing it, benefit from participation in said program."

G. L. c. 276A, § 2.

In 2012, the pretrial diversion statute, among others, was amended by the VALOR Act, St. 2012, c. 108, to assist veterans and active duty service members of the United States armed forces in numerous ways as they resumed their civilian lives.[10] The VALOR Act added G. L. c. 276A, §§ 10 and 11.

Section 10 defines eligible military defendants in language that almost precisely mirrors that used in G. L. c. 276A, § 2, to define young adults eligible for the protections of G. L. c. 276A, except that it applies to veterans:

"The district courts, and in Boston, the municipal court of the city of Boston, shall have jurisdiction to divert to a program any person who is a veteran, . . . on active service in the armed forces of the United States, . . . or who has history of military service in the armed forces of the United States who is charged with an offense against the [C]ommonwealth for which a term of imprisonment may be imposed, regardless of age, who has not previously been convicted of a violation of any law of the

---

[10] In addition to the provisions at issue here, the VALOR Act, inter alia, amended G. L. c. 7, § 61, to provide benefits for veteran-owned businesses; added G. L. c. 15A, § 42, to provide help for veterans seeking higher education; inserted G. L. c. 15E to streamline transfers between school districts for children of service members; amended G. L. c. 59 to provide property tax benefits for veterans; amended G. L. c. 146 to help veterans and members of the military maintain professional licenses; and amended G. L. c. 10, § 35CC, to expand access to food, housing, utilities, and medical benefits.

[C]ommonwealth or of any other [S]tate or of the United States . . . after having reached the age of [eighteen] years . . . who does not have any outstanding warrants, continuances, appeals or criminal cases pending before any courts of the [C]ommonwealth or any other [S]tate or of the United States and who has received a recommendation from a program that such person would, in light of the capacities of and guidelines governing it, benefit from participation in said program."

G. L. c. 276A, § 10.

The pretrial diversion statute, as originally enacted in 1974, explicitly excludes otherwise eligible defendants charged with certain offenses from pretrial diversion, G. L. c. 276A, § 4, and sets forth a detailed process to be followed in screening eligible defendants for admission to a program, G. L. c. 276A, § 3. It allows a judge to "afford[] a fourteen-day continuance for assessment by the personnel of a program to determine if [the defendant] would benefit from such program." Id. In 2012, the VALOR Act added G. L. c. 276A, § 11, creating a similar procedure for qualifying veterans: a judge may "afford[] a [fourteen]-day continuance . . . to seek an assessment by the United States Department of Veterans Affairs, the [D]epartment of [V]eterans' [S]ervices or another [S]tate or [F]ederal agency with suitable knowledge and experience of veterans affairs to provide the court with treatment options . . . including diversion programs."

If, after receiving the requisite information in the assessment, and any response by the Commonwealth, the judge

determines that the defendant should enter the program, and the defendant "agrees to abide by the terms and conditions in the plan of services," "[t]he criminal proceedings of [a] defendant who qualifies for diversions under [G. L. c. 276A, § 2,] . . . shall be stayed for a period of ninety days, unless the judge in his [or her] discretion considers that the interest of justice would be served by a hearing of the facts, after which the case may be continued without a finding for ninety days."  G. L. c. 276A, § 5.

At the end of the ninety-day stay or the continuance without a finding, the judge may dismiss the underlying charge "[i]f the report indicates the successful completion of the program by a defendant."  G. L. c. 276A, § 7.  If, at the end of that time, the defendant has not completed the program successfully, or if the program recommends that the stay be extended, the judge may, in his or her discretion, extend the stay, dismiss the charges, return the case to the trial list, or "take such action as he [or she] deems appropriate."  Id.

b.  OUI statute, G. L. c. 90, §§ 24, 24D.  Against the backdrop of otherwise available alternative dispositions,[11] the OUI statute has long limited to only specific classes of OUI

---

[11] See, e.g., G. L. c. 278, § 18 (allowing continuance without finding "unless otherwise prohibited by law"); Mass. R. Crim. P. 28 (e), 453 Mass. 1501 (2009) (allowing court to file case without imposing sentence after guilty finding or verdict).

offenders the availability of certain alternative dispositions.
The statute has been amended numerous times in its eighty-five
year history; at the time of Morgan's arrest, the OUI statute
provided, as it does today, that "[i]f the defendant has been
previously convicted or assigned to an alcohol or controlled
substance education, treatment, or rehabilitation
program[,] . . . [a] prosecution . . . shall not be placed on
file or continued without a finding except for dispositions
under [§ 24D]." [12]  G. L. c. 90, § 24.  Adopted in 1974, G. L.
c. 90, § 24D, in turn, allows a judge to dismiss a case or to
enter a continuance without a finding after successful
completion of a program, for certain defendants.  Such
dismissals and continuances are limited to first offenses[13] and,
once in a lifetime, to those with "a single like offense . . .
[ten] years or more before the date of the commission of the

---

[12] General Laws c. 90, § 24, has been amended since Morgan's
arrest; those amendments are not relevant to the portions of the
statute at issue here.

[13] See St. 2002, c. 302; St. 1994, c. 25; St. 1975, c. 505;
St. 1974, c. 647.  While the parties appear to argue whether
"Melanie's Law," enacted in 2005, see St. 2005, c. 122,
precluded an alternate disposition on a charge of OUI, second
offense, such a disposition had been precluded several years
earlier, by the amendments to the OUI statute in St. 2002,
c. 302.  The 2005 revisions included enhanced penalties for a
number of OUI offenses, and added provisions requiring ignition
interlocks for those individuals who have been convicted of OUI,
second or subsequent offense, if they are issued a hardship
license or upon return of their driver's licenses.

[present] offense."[14]

3. Discussion. a. Statutory authority under G. L.
c. 276A. Until the VALOR Act amended the statute in 2012, the special protections of the pretrial diversion statute that authorized judges to enter continuances without a finding or to dismiss charges against defendants who successfully completed a treatment program had been limited to young adults who were too old to fall under the jurisdiction of the Juvenile Court, but had not yet reached their twenty-second birthdays.[15] As noted, the VALOR Act, in 2012, amended the preexisting pretrial diversion statute by adding §§ 10 and 11, thereby extending to veterans and service members the opportunity for pretrial diversion.

The initial question we confront is whether G. L. c. 276A, as amended by the VALOR Act, permits a judge to dismiss or to continue without a finding criminal charges brought against a

---

[14] Morgan's prior case was resolved in December, 2004, approximately nine years and ten months before the incident at issue here.

[15] As initially enacted, the pretrial diversion statute applied to young adults from the age of seventeen until they reached their twenty-second birthday. See St. 1974, c. 781. In 2013, G. L. c. 276A, as amended by the VALOR Act, was further amended to limit its application to defendants who are at least eighteen years old, but who have not yet reached their twenty-second birthday, see St. 2013, c. 84, § 32, in conjunction with the extension of the Juvenile Court's jurisdiction to individuals who are seventeen years old.

qualifying military defendant upon his or her successful completion of an approved pretrial diversion program. The Commonwealth is of the view that §§ 10 and 11 on their face in essence permit no more than a continuance of court proceedings to enable military defendants to seek treatment through approved programs; they do not themselves authorize alternative dispositions even upon the successful completion of such programs. On this view, the successfully treated military defendant would then face resumed prosecution of the charged offenses. We do not share this view. In concluding that the statute confers upon judges the authority to order alternative dispositions and thereby divert successfully treated military defendants from further criminal prosecution, we reject the Commonwealth's contention that §§ 10 and 11, added by the VALOR Act, are to be read in isolation from the remainder of the pretrial diversion statute. This conclusion follows from the application of our usual rules of statutory construction and the plain language of the statute itself, and is confirmed by our review of the history and purpose of the VALOR Act.

In construing a statute, we strive to discern and effectuate the intent of the Legislature. The plain language of the statute, read as a whole, provides the primary insight into that intent. See Commonwealth v. Peterson, 476 Mass. 163, 167 (2017). We do not confine our interpretation to the words of a

single section.  See Commonwealth v. Keefner, 461 Mass. 507, 511
(2012); 2A N.J. Singer & S. Singer, Statutes and Statutory
Construction § 46:5 (7th ed. rev. 2014).  To the extent that the
meaning of a statute remains unclear, we seek to "ascertain the
intent of a statute from all its parts and from the subject
matter to which it relates, and must interpret the statute so as
to render the legislation effective, consonant with sound reason
and common sense."  Seideman v. Newton, 452 Mass. 472, 477
(2008).  We consider "the cause of [the statute's] enactment,
the mischief or imperfection to be remedied and the main object
to be accomplished."  Wing v. Commissioner of Probation,
473 Mass. 368, 373 (2015), quoting Hanlon v. Rollins, 286 Mass.
444, 447 (1934).

We begin with the language of G. L. c. 276A, §§ 10 and 11,
viewing it in the context of the pretrial diversion statute as a
whole.  Doing so leaves no doubt that the Legislature intended
to give veterans and active duty members of the military the
same benefits of pretrial diversion programs and the alternative
dispositions already afforded under the statute to young adults.
"When the Legislature uses the same term in . . . different
statutory sections, the term should be given a consistent
meaning throughout."  Commonwealth v. Hilaire, 437 Mass. 809,
816 (2002).  Here, not only did the Legislature use the same
term -- "divert" -- in G. L. c. 276A, § 10, as in G. L. c. 276A,

§ 2, it also used nearly identical language throughout both of the two sections.  Compare G. L. c. 276A, § 2 (defining eligibility for diversion of young adults), with G. L. c. 276A, § 10 (defining eligibility for diversion for veterans and active duty service members).  Virtually the only difference between these sections is that, while G. L. c. 276A, § 2, applies to those who have "reached the age of [eighteen] years but [have] not reached the age of twenty-two," G. L. c. 276A, § 10, applies to "veteran[s], . . . [those] on active service . . . , [and those] who [have] history of military service . . . regardless of age."  Accordingly, we conclude that in using the word "divert" in G. L. c. 276A, § 10, the Legislature intended it to have the same meaning as in the virtually identical language of G. L. c. 276A, § 2, to divert in contemplation of a continuance without a finding or dismissal.

The Commonwealth nevertheless argues that the provisions of G. L. c. 276A, §§ 5 and 7 (allowing pretrial diversion programs and alternative dispositions), do not apply to veterans and active duty members of the military who have been deemed eligible for diversion under G. L. c. 276A, § 10.  The Commonwealth relies in this regard on the absence of language in §§ 5 and 7 (generally addressing continuances of cases for qualifying young defendants as defined in G. L. c. 276A, § 2), that cross-references §§ 10 and 11 concerning military

defendants.  At the same time, it ignores the fact that G. L. c. 276A, § 7 (permitting a judge, "[u]pon the expiration of the initial ninety-day stay of proceedings or . . . continuance without a finding" to dismiss the charges, extend the stay for further treatment, continue the case without a finding, or resume criminal proceedings), itself references no other section of the statute.  Such parsing of the statute is, in any event, unavailing.  The proffered construction is inconsistent with the fundamental canons of statutory interpretation, requiring that we read statutes concerning the same subject matter as a harmonious whole wherever possible, see Commonwealth v. Ventura, 465 Mass. 202, 208-209 (2013); Keefner, 461 Mass. at 511, and that we read them in a commonsense way to effectuate legislative intent and avoid absurd results.  See, e.g., Worcester v. College Hill Props., Inc., 465 Mass. 134, 138-139 (2013), and cases cited.

To read the statute in the fragmented fashion that the Commonwealth suggests would mean that the VALOR Act amendments do nothing more than allow military defendants some time away from court proceedings for treatment, after which they would face resumed prosecution.  We note that, prior to enactment of the VALOR Act, a District Court judge already had authority to continue a case for a period of time in order to permit a mental health evaluation of a defendant, and to consider that

evaluation in imposing a sentence.  Had the VALOR Act amendment simply allowed for a brief continuance for assessment, while the case remained on the trial track, it would have done little to change existing practice.[16]  The Legislature plainly had more in mind than this, and "[i]f a sensible construction is available, we shall not construe a statute to make a nullity of pertinent provisions or to produce absurd results."  Commonwealth v. Figueroa, 464 Mass. 365, 368 (2013), quoting Flemings v. Contributory Retirement Appeal Bd., 431 Mass. 374, 375-376 (2000).

Providing pretrial diversion for veterans and active duty members of the military, on the same terms as young adults, is consistent with the Legislature's purpose both in enacting the pretrial diversion statute in 1974 and in amending it through the VALOR Act in 2012.  The pretrial diversion statute originally was intended to provide rehabilitation to those whose criminal habits had not become "fixed."  See Rosenbloom, Bill Backs 'Diversion' for Youths in Trouble, Boston Globe, Feb. 12,

---

[16] The Commonwealth suggests that the VALOR Act served to alter previous practice by requiring the department of probation, rather than defense counsel, to identify eligible military defendants.  This minimal benefit is difficult to reconcile with the Legislature's stated goal of providing for "appropriate resolution[s]" in cases involving such defendants.  See House Floor Hearing, May 12, 2012 available at http://www.statehousenews.com/content/gallery/audio/2012/House/05-16audio-hou.mp3.

1973, quoting bill supporter.  See also Zablotsky, An Analysis of State Pretrial Diversion Statutes, 15 Colum. J.L. & Soc. Probs. 1, 8 (1979).  Its supporters observed that a criminal record, coupled with a short period of incarceration, could lead to a "cycle of crime and prison . . . , ever more vicious." Help Needed Now for Youthful Offenders, Boston Globe, July 23, 1974, at 22.  Avoiding this cycle would benefit both these young adults and society as whole.

In 2012, the Legislature added veterans and active duty members of the military to the pretrial diversion statute in service of the same goal:  addressing the special needs of a group of offenders for whom the Legislature believed conviction and punishment were not necessarily appropriate.  As with young adults, the Legislature recognized that, for veterans and active duty members of the military, the conventional path, leading to a permanent criminal record, fails to "address [their] needs" or to provide "the appropriate resolution," and that, if enabled to address the unique challenges they face, veterans could be strong candidates for rehabilitation.  House Floor Hearing at 26:55, May 16, 2012, available at http://www.statehousenews.com/ content/gallery/audio/2012/House/05-16audio-hou.mp3 (Statement of Rep. James E. Vallee).  Cf. Porter v. McCollum, 558 U.S. 30, 43 (2009) (noting nation's "long tradition of according leniency to veterans in recognition of their service").

The special consideration afforded to veterans in the District Courts was part of the VALOR Act's comprehensive effort to "[e]nsur[e] access to health care, education, employment and financial security" for veterans, particularly the 37,000 Massachusetts veterans who served in Iraq and Afghanistan.  See Press Release, Governor Patrick Signs VALOR Act to Increase Opportunities for Veterans (May 31, 2012).  Imposing an alternative disposition to avoid a criminal conviction furthers these goals.  See Commonwealth v. Pon, 469 Mass. 296, 316-317 (2014) (effects of conviction may include severe collateral consequences including "unemployment, underemployment, or homelessness").

b.  Constitutional authority.  The Commonwealth maintains that, to the extent the pretrial diversion statute, as amended by the VALOR Act, authorizes judges to order alternative dispositions, it violates the separation of powers.  See art. 30 of the Massachusetts Declaration of Rights ("the judicial [branch] shall never exercise the . . . executive powers").  The Commonwealth is mistaken.

A decision whether to prosecute a criminal case rests exclusively with the executive branch.  In the absence of a legal basis to do so, it is well established that a judge may not dismiss a valid complaint over the Commonwealth's objection.  See Commonwealth v. Cheney, 440 Mass. 568, 574 (2003).  Where

the Legislature has granted the authority to dismiss a case or to continue it without a finding, however, a judge may exercise that authority without offending art. 30. See Commonwealth v. Guzman, 446 Mass. 344, 349 (2006) (dismissal); Commonwealth v. Pyles, 423 Mass. 717, 719 (1996) (continuance without a finding). This is so because of the Legislature's "broad authority to classify criminal conduct, to establish criminal penalties, and to adopt rules of criminal . . . procedure." Pyles, supra at 722. As the pretrial diversion statute provides specific authority to a District Court judge to dismiss a case or to continue it without a finding, a judge exercising that authority is not in violation of the separation of powers.

c. Reported questions. Having concluded that a judge has authority under the pretrial diversion statute to enter a dismissal or a continuance without a finding as to qualifying defendants in appropriate circumstances, we turn to the reported questions.

The provisions of the pretrial diversion statute that authorize judges to allow the alternative dispositions discussed appear to conflict with the OUI statute, insofar as the latter prohibits a charge of OUI, second or subsequent offense, from being "placed on file or continued without a finding." G. L. c. 90, § 24. The Commonwealth urges that we resolve this apparent conflict by applying the maxim that a more specific

statute controls over one that is more general.  See
Commonwealth v. Harris, 443 Mass. 714, 723-724 (2005); Boston
Housing Auth. v. Labor Relations Comm'n, 398 Mass. 715, 718
(1986).  It urges that the result will then be that a judge may
not continue without a finding or dismiss such charges because
the OUI statute controls over the pretrial diversion statute.

Neither statute, however, fairly may be said to be more
specific than the other, because each covers ground that the
other does not.  See Harris, 443 Mass. at 724-725; Commonwealth
v. John G. Grant & Sons, 403 Mass. 151, 156 (1988) ("neither
penalty provision is more specific than the other and thus
controlling").  The OUI statute is more specific in the sense
that it applies only to one type of offense; the pretrial
diversion statute is more specific in that its application is
limited to two narrow subsets of defendants.  Neither statute
fully encompasses the other, but, instead, the two statutes
overlap in part, akin to a Venn diagram.  In the circumstances
here, denominating one statute as more specific than the other
would rest on no more than an arbitrary choice.

Similarly, another statutory maxim, to the effect that the
later statute controls over the earlier, see Commonwealth v.
Russ R., 433 Mass. 515, 521 (2001), does not resolve the matter.
The history of amendments to both statutes precludes a simple
answer to the question which statute predates the other.  The

limitations governing alternative dispositions for those charged with OUI, second offense, have been amended many times over the past eighty-five years,[17] while the pretrial diversion statute was amended nearly thirty years after its enactment to include military defendants.

These tools being of limited utility at best, we look beyond them in an effort to harmonize the two statutes by discerning the underlying policies each serves.  See Wing, 473 Mass. at 373; Harris, 443 Mass. at 726 (we look to "serve[] the policies underlying both" statutes "to the greatest extent possible").  The OUI statute serves the evident goal of protecting the public from the grave dangers presented by those drivers who repeatedly drive while impaired by alcohol or drugs.

---

[17] When the first version of the OUI statute was enacted in 1932, it provided that "[t]he prosecution of any person . . . , if the offen[s]e is committed within a period of six years immediately following his final conviction of a like offen[s]e . . . , shall not in any event be placed on file or otherwise disposed of except by trial, judgment and sentence according to the regular course."  See St. 1932, c. 26, § 1.

Soon thereafter, the Legislature eliminated this categorical rule, but, in language still in effect today, provided that a defendant charged with any OUI offense could not receive an alternative disposition "unless the interests of justice require."  St. 1936, c. 434, § 1.  In 1982, the Legislature limited the availability of continuances without a finding on a charge of OUI, even where required by the interests of justice, to the detailed and specific requirements set forth in G. L. c. 90, § 24D.  See St. 1982 c. 373, § 2.  In 1994, and again in 2002, the Legislature again limited those defendants eligible for pretrial diversion under G. L. c. 90, § 24D.  See St. 1994, c. 25; St. 2002, c. 302.

The pretrial diversion statute, for reasons already discussed, gives special consideration to two groups of people who are susceptible to substance abuse but may be amenable to successful rehabilitation.  The two statutes do not serve the same goals except to the extent that successful rehabilitation of drivers with substance abuse problems will redound to public safety.  Mindful that the VALOR Act was enacted against the backdrop of two preexisting statutes with which the Legislature had familiarity, we reconcile both, however imperfectly, by concluding that the Legislature did not intend to preclude the alternative dispositions permitted under the pretrial diversion statute in situations such as this.  See Harris, supra.

We note that, in amending c. 276A in 2012, the Legislature expressed special concern for veterans and active military service members struggling with substance abuse.  Specifically, in the words of then Secretary of Veterans' Services Coleman Nee, legislators recognized that trauma as a result of combat service, "may lead to . . . substance abuse," see Tuoti, Court for Vets Opens in Boston, Enterprise, Mar. 7, 2014, and that, for service members thus ensnared, "incarceration without medical or clinical support results in a higher rate of recidivism."  Bolton, Court Throws Veterans a Lifeline, Boston Globe, Apr. 11, 2013.

As one of the sponsors of the VALOR Act, Representative

Jason Lewis, explained, the Legislature adopted the pretrial diversion provisions of the VALOR Act as part of a broader effort to provide an alternative to the traditional path of conviction and incarceration, particularly for those "veterans who face mental health and substance abuse issues."  The Need to Support, Thank Our Veterans, Beverly Citizen, Dec. 13, 2012.[18] This approach is consistent with a growing national recognition that the traditional processes of the criminal justice system fail adequately to support veterans suffering from substance abuse.[19]  Moreover, when the Legislature enacted the VALOR Act in 2012, it was well aware of the provisions of "Melanie's Law,"

---

[18] As part of that ongoing effort, in 2014, the Legislature enacted a second VALOR Act, also sponsored by Senator Michael J. Rush, chair of the Joint Committee on Veterans Affairs.  That act, among other things, established a pilot program for "veteran's courts," to assist with implementation of the pretrial diversion provisions in the 2012 VALOR Act.  See St. 2014, c. 62, § 33.

[19] Commentators nationally have emphasized that veterans face unique challenges stemming from high rates of combat-related PTSD and other mental health issues, and consequent high rates of substance abuse, frequently leading to criminal charges.  See, e.g., American Bar Association, Resolution 105A, at 3 (Feb. 2010) (ABA Report) (discussing "opinion of psychiatrists and law enforcement officials that the traumas of combat result in PTSD that can lead to addiction and erratic behavior that result in criminal charges" and "[r]ecognizing the important role" diversion programs can play); B.R. Schaller, Veterans on Trial:  The Coming Battles Over PTSD 18, 211 (2012). They also recognize that traditional criminal sanctions for those trapped in the cycle of substance abuse can "push veterans further outside society," at great cost to veterans and society as a whole.  See ABA Report, supra at 6.

St. 2005, c. 122, that it enacted in 2005 to increase penalties for those who drive while impaired by drugs or alcohol.[20] In that light, categorically to exclude OUI, second offense, a common issue stemming from substance abuse,[21] from the protections of G. L. c. 276A, as amended by the VALOR Act, would undermine the legislative purpose.

This conclusion does not diminish recognition of the serious hazard to public safety presented by those who drive while impaired by drugs or alcohol, especially by those who do so repeatedly, nor does it question the importance of deterring this menacing conduct by all prescribed means. The Legislature appears to have struck a delicate balance by permitting a discretionary rehabilitative alternative to criminal penalties in certain limited circumstances, for two discrete groups, that is also consonant with deterrence in service of public safety.

It is also well to note that by vesting District Court judges with discretion to order pretrial diversion to certain military defendants, the statute does not in any way offer

---

[20] See State House News Service (House Sess.), Oct. 27, 2005 (comments of Representative Salvatore DiMasi).

[21] See, e.g., A.J. Peller, L.M. Najavits, S.E. Nelson, R.A. LaBrie, & H.J. Shaffer, PTSD Among a Treatment Sample of Repeat DUI Offenders, 23 J. Traumatic Stress 468 (Aug. 2010); National Institute on Drug Abuse, Drugged Driving (rev. June 2016), available at https://www.drugabuse.gov/publications/drugfacts/drugged-driving [https://perma.cc/DRB8-A3VS].

assurance of an alternative disposition.[22]  A judge has

discretion to allow pretrial diversion to a program only after a

defendant has been assessed by a specific program, and after

considering the Commonwealth's view of pretrial diversion for

that particular defendant, to that specific program.[23]  Even

after successful completion of that program, the judge retains

---

[22] The pretrial statute has application only to the District
and Boston Municipal Courts.  Even where the Commonwealth
proceeds by complaint in the District Court or the Boston
Municipal Court rather than by indictment in the Superior Court,
given that G. L. c. 276A, § 10, confines eligibility to those
without a prior conviction, it is difficult to envision
circumstances where a judge would exercise discretion favorable
to defendants charged with OUI offenses subsequent to a second
offense.

[23] The decision that a particular defendant likely would
benefit from such a program is individualized and fact-specific,
reported in writing by a qualified treatment provider, working
in conjunction with the VA, after a two-week assessment period.
See G. L. c. 276A, §§ 3, 5.  A judge considering a report that a
military defendant could benefit from such a program must weigh
that report, any statement by the Commonwealth, and the judge's
own observations, and determine, in the exercise of his or her
discretion, whether to allow a stay or a continuance so that the
military defendant can participate in the treatment program.
See G. L. c. 276A, § 5.

Throughout a defendant's participation in a pretrial
diversion program, the program must submit periodic reports to
the judge.  See G. L. c. 276A, § 6.  At any point during that
period, should the program report that the defendant has failed
to comply with program requirements, or if the defendant commits
a new offense, the judge may order the stay terminated and the
case returned to the trial list.  See id.  After the initial
period of the stay, if the program reports that an extension of
the stay would help the defendant successfully to complete the
program, the judge may order such an extension.  See G. L.
c. 276A, § 7.

discretion over the ultimate disposition of the matter; the statute provides only that a judge "may" dismiss the original charges upon successful completion.  G. L. c. 276A, § 7.

Finally, while we conclude that the construction we provide of the pretrial diversion statute, as amended by the VALOR Act, satisfactorily reconciles it with the OUI statute and best effectuates the Legislature's intent when enacting the VALOR Act in 2012, we recognize that the matter is not free from doubt. If the result here does not comport with what was intended, the Legislature may, of course, remedy this by enacting clarifying legislation.  See Commonwealth v. Zapata, 455 Mass. 530, 533 n.4 (2009).

3.  Conclusion.  We answer both reported questions, "Yes," and remand the case to the District Court for further proceedings consistent with this opinion.

So ordered.