NOTICE:  Summary decisions issued by the Appeals Court pursuant to M.A.C. Rule 23.0, as appearing in 97 Mass. App. Ct. 1017 (2020) (formerly known as rule 1:28, as amended by 73 Mass. App. Ct. 1001 [2009]), are primarily directed to the parties and, therefore, may not fully address the facts of the case or the panel's decisional rationale.  Moreover, such decisions are not circulated to the entire court and, therefore, represent only the views of the panel that decided the case.  A summary decision pursuant to rule 23.0 or rule 1:28 issued after February 25, 2008, may be cited for its persuasive value but, because of the limitations noted above, not as binding precedent.  See Chace v. Curran, 71 Mass. App. Ct. 258, 260 n.4 (2008).

COMMONWEALTH OF MASSACHUSETTS

APPEALS COURT

24-P-648

ATHOL POLICE DEPARTMENT

vs.

CHRISTOPHER K. HART.

MEMORANDUM AND ORDER PURSUANT TO RULE 23.0

On June 28, 2022, the defendant, Christopher K. Hart, was driving a Can-Am Maverick X3 quadricycle (the Maverick) bearing a Montana registration plate on a public way in Athol.  A police officer stopped and cited Hart for (1) unlawfully operating a recreation vehicle on a public way, G. L. c. 90B, § 25, and (2) operating a recreation vehicle without a helmet.  G. L. c. 90B, § 26 (d) (2010).[1]  Hart appeals from a decision and order of the Appellate Division of the District Court affirming a District Court judge's determination that he was responsible for both infractions.  Because we conclude that the Maverick is a

_____

[1] The statute was amended in 2024.  All references to § 26 are to the version effective October 29, 2010.

"recreation vehicle" that may not be operated on a public way, see G. L. c. 90B, §§ 20, 25, and that any privilege Hart had under G. L. c. 90, § 3, to operate the Maverick under its Montana registration had expired by the time the citation was issued, we affirm.

Background. The relevant facts are not disputed. We summarize them here, reserving some for later discussion.

At all relevant times, the Maverick was owned by C&J SxS, LLC (C&J), a limited liability company organized in Montana that offered guided sightseeing tours in Massachusetts, New York, Vermont, New Hampshire, and Florida. According to C&J's articles of organization, the business's two members, Hart and Jericho Fellows, shared an address in Orange, Massachusetts (Orange address).

On June 28, 2022, Officer Paul Forand of the Athol Police Department saw the Maverick parked on the street in front of a local bar. He determined that, although the Maverick was registered in Montana, it was a "recreation vehicle" under Massachusetts law, see G. L. c. 90B, § 20, and therefore could not legally be driven on a public way in Massachusetts. See G. L. c. 90B, § 25 ("Except as hereinafter provided, no person shall operate . . . a recreation vehicle upon any state, county, city or town way in the commonwealth, . . . nor upon any other public way . . ."). Accordingly, when he saw Hart and another

2

person get into the Maverick, and saw Hart drive along the street without a helmet, he stopped the Maverick and cited Hart.

Arguing in part that the Maverick's valid Montana registration was entitled to reciprocity under G. L. c. 90, § 3 (reciprocity statute), Hart challenged the citation in the District Court (including, as we have noted, before the Appellate Division).  When he was unsuccessful, he appealed to this court.  See G. L. c. 90C, § 3 (A) (4); G. L. c. 231, § 109.

Discussion.  1.  Standard of review.  To the extent Hart's challenge presents a question of statutory interpretation, our review is de novo.  See Conservation Comm'n of Norton v. Pesa, 488 Mass. 325, 331 (2021).  Likewise, we treat the question whether there was adequate evidence to show that Hart committed the civil infractions at issue as one of law.  See Burlington Police Dep't v. Hagopian, 100 Mass. App. Ct. 720, 726 (2022).  Our review is therefore de novo and, in conducting it, we view the evidence in the light most favorable to the Commonwealth.  See id.

2.  Recreation vehicle.  As relevant here, G. L. c. 90B, § 20, defines "recreation vehicle" as

> "any motor vehicle designed or modified for use over unimproved terrain for recreation or pleasure while not being operated on a public way as defined in chapter 90 including, but not limited to, all-terrain vehicles, off-highway motorcycles, dirt bikes, recreation utility vehicles and all registered motor vehicles while not being operated on a public way as defined in said chapter 90."

3

The language of this section is, if not a model of clarity, not ambiguous.  Read "in a commonsense way to effectuate legislative intent and avoid absurd results," Commonwealth v. Morgan, 476 Mass. 768, 778 (2017), the statutory definition of "recreation vehicles" includes motor vehicles, like the Maverick, that are "designed . . . for use over unimproved terrain for recreation or pleasure while not being operated on a public way," as well as "registered motor vehicles" when they are being used off-road.[2]  G. L. c. 90B, § 20.  Accordingly, the Maverick is a "recreation vehicle" under Massachusetts law.

As a "recreation vehicle," the Maverick is not eligible for registration in Massachusetts for on-road use.  See 540 Code Mass. Regs. § 2.05(3) (2021).  With one exception not relevant

---

[2] General Laws c. 90, § 1, as amended through St. 2019, c. 122, § 1 (effective February 23, 2020), defines "motor vehicles" as including

"all vehicles constructed and designed for propulsion by power other than muscular power . . . except railroad and railway cars, vehicles operated by the system known as trolley motor or trackless trolley . . . , vehicles running only upon rails or tracks, vehicles used for other purposes than the transportation of property and incapable of being driven at a speed exceeding twelve miles per hour and which are used exclusively for the building, repair and maintenance of highways or designed especially for use elsewhere than on the travelled part of ways, wheelchairs owned and operated by invalids and vehicles which are operated or guided by a person on foot[, and excluding] motorized bicycles."

4

here,[3] a "motorized vehicle originally designed and manufactured for off-road use[] . . . that could be registered under [G. L.] c. 90B cannot be registered for on-road use," even "as modified for on-road use."  540 Code Mass. Regs. § 2.05(3) (2021).

3.  Reciprocity statute.  Hart argues that, even if the Maverick is a "recreation vehicle" as defined in G. L. c. 90B, § 20, because it was properly registered for on-road use in Montana, he was entitled to operate it on the road in Massachusetts under the terms of our reciprocity statute:  G. L. c. 90, § 3.  That section provides, in relevant part, that

> "a motor vehicle or trailer owned by a non-resident who has complied with the laws relative to motor vehicles and trailers, and the registration and operation thereof, of the state or country of registration, may be operated on the ways of this commonwealth without registration under this chapter, to the extent, as to length of time of operation and otherwise, that, as finally determined by the registrar, the state or country of registration grants substantially similar privileges in the case of motor vehicles and trailers duly registered under the laws and owned by residents of this commonwealth."

G. L. c. 90, § 3.

Importantly, however, the privileges afforded to out-of-State motor vehicle registrations under G. L. c. 90, § 3, are time limited.  The Legislature was express that when

> "a motor vehicle or trailer, owned by a non-resident, . . . is in the possession or under the control of a resident of

---

[3] "Only a 'motorcycle' properly converted from off-road use may be registered for on-road use."  540 Code Mass. Regs. § 2.05(3) (2021).

5

this commonwealth for a period greater than thirty days, in the aggregate within a calendar year, . . . and . . . is registered in another state or country, [that motor vehicle or trailer] shall not be operated on the ways of this commonwealth, unless registered under this chapter."

G. L. c. 90, § 3.[4]  We conclude that this time-limiting provision is fatal to Hart's challenge to the validity of the citation in this case.[5]

It was undisputed that the Maverick was owned by "a non-resident" of Massachusetts, as C&J is organized in Montana. G. L. c. 90, § 3.  Additionally, there was adequate evidence to show that Hart and Fellows were "residents" of Massachusetts.[6]

---

[4] This section also states that "no motor vehicle or trailer shall be . . . operated [under a foreign registration and on a reciprocal basis] on more than thirty days in the aggregate in any one year."  G. L. c. 90, § 3.  Given our conclusion that other time-limiting provisions in the statute apply here, we need not reach the question whether the evidence was also adequate to support responsible findings based on this limitation in § 3.

[5] We do not know whether the District Court judge's or Appellate Division's rulings turned on these points; neither the judge nor the Appellate Division was required to explain their decisions beyond the rulings they provided, see G. L. c. 90C, § 3 (A) (4), and neither did so.  We, however, can affirm the final ruling on "any ground apparent on the record."  Adoption of Franklin, 99 Mass. App. Ct. 787, 802 (2021), citing Gabbidon v. King, 414 Mass. 685, 686 (1993).

[6] We note that the Athol Police Department did not introduce a copy of the citation at issue in evidence at the May 2023 hearing, and so we do not know what address was listed on the citation for Hart.  See Hagopian, 100 Mass. App. Ct. at 723, quoting G. L. c. 90C, § 3 (A) (4) (citation is "prima facie evidence of the facts stated therein").  Additionally, while Hart testified at the hearing, he was not asked about his residential address.  Fellows did not testify at the hearing.

6

See id.; Hagopian, 100 Mass. App. Ct. at 726 (evidence is considered in light most favorable to prosecution).  This included documentation showing that they both provided the Orange address (and no other address) (1) to the Montana Secretary of State when they formed C&J in 2021, (2) to the corporation they used to register C&J in Montana in 2021, and (3) on the insurance policy documentation provided for the Maverick by Hart's counsel.[7]  Furthermore, at the time the citation was issued, Hart was operating the Maverick in Athol (a town that borders Orange), see Commonwealth v. Augustine, 472 Mass. 448, 457 n.14 (2015) (appellate court may take judicial notice of geographic locations), and he had given a C&J scenic tour (inferentially, using the Maverick) earlier that evening. In the light most favorable to the Commonwealth, see Hagopian, supra, this evidence was adequate to establish that Hart and Fellows were Massachusetts residents at the times relevant here. See Rummel v. Peters, 314 Mass. 504, 511 (1943).

Finally, the judge could have concluded that, notwithstanding its Montana registration, the Maverick had

_____

[7] The insurance policy coverage pages in our record appear to apply to a policy period from February 2023 to February 2024. Where Hart relied upon those pages to support his contention that the Maverick was properly insured at the time the citation issued in June 2022, we understand that the address listed on those pages was also accurate at the time of the citation.

7

"[been] in [Hart's] possession or under [his] control" for more than a total of thirty days within a calendar year. See G. L. c. 90, § 3. Although C&J was organized in Montana and the Maverick was registered in that State, the evidence before the judge was adequate to prove that, for practical purposes, C&J's business was and always had been based in Massachusetts. C&J's only members were Hart and Fellows, who, as we have noted, used the Orange address exclusively in their business-related communications with the Montana Secretary of State and C&J's insurer. See Rummel, 314 Mass. at 511. Moreover, the only drivers listed on the Maverick's insurance policy document were Hart and Fellows, and the only contact information on that document listed the Orange address. Perhaps most importantly, Hart testified that C&J had been offering tours in Massachusetts, several States bordering Massachusetts, and Florida, and that, to do so (as well as to extend tours to other States), he was "obtaining a fleet of [Mavericks]."[8] It would certainly be reasonable to infer that the Maverick that Hart was using for the Massachusetts tours had been in his control since the time it became part of his nascent "fleet," and that Hart

---

[8] Notably, although Hart testified that C&J's "goal is to [expand the business] out towards the Midwest" and Montana, he did not testify that C&J conducted any tours in Montana.

8

had been using it in Massachusetts as part of C&J's local operations.

We are satisfied that this evidence was adequate to refute Hart's claim to the protections of the reciprocity statute and to establish by a preponderance of the credible evidence, see G. L. c. 90C, § 3 (A) (4), that the citation at issue was valid.[9] In light of our conclusion, we need not decide whether a vehicle that cannot be registered in Massachusetts for on-road use may, if properly registered for such use in another State, ever be permitted on the ways of the Commonwealth under the reciprocity statute. Moreover, given our conclusion that the Maverick could not be lawfully operated on a public way, see G. L. c. 90B, §§ 20, 25, and that any privilege Hart had under G. L. c. 90, § 3, to operate the Maverick under its Montana registration had expired by the time the citation was issued, to the extent that Hart's remaining arguments were preserved in the District Court,

---

[9] As to the infraction for operating without a helmet, G. L. c. 90B, § 26 (d), provides, "No person shall operate or ride in . . . a recreation vehicle . . . without wearing protective headgear." As we have noted, the Maverick was "a recreation vehicle" for the purposes of that section, making the citation for operating a recreation vehicle without a helmet valid in this case.

see Carey v. New England Organ Bank, 446 Mass. 270, 285 (2006), we need not address them either.

Conclusion.  The decision and order of the Appellate Division is affirmed.

So ordered.

By the Court (Rubin, Hand & Smyth, JJ.[10]),

Clerk

Entered:  July 25, 2025.

---

[10] The panelists are listed in order of seniority.