NOTICE:  All slip opinions and orders are subject to formal
revision and are superseded by the advance sheets and bound
volumes of the Official Reports.  If you find a typographical
error or other formal error, please notify the Reporter of
Decisions, Supreme Judicial Court, John Adams Courthouse, 1
Pemberton Square, Suite 2500, Boston, MA, 02108-1750; (617) 557-
1030; SJCReporter@sjc.state.ma.us

SJC-12638


COMMONWEALTH  vs.  ALEXANDER RODRIGUEZ.



Middlesex.     February 7, 2019. - May 28, 2019.

Present:  Gants, C.J., Lenk, Gaziano, Lowy, Budd, Cypher,
& Kafker, JJ.


Firearms.  Practice, Criminal, Sentence.  Statute, Construction.



Indictments found and returned in the Superior Court
Department on December 8, 2015.

A motion to reconsider sentencing was heard by Thomas P.
Billings, J., and a question of law was reported by him to the
Appeals Court.

The Supreme Judicial Court on its own initiative
transferred the case from the Appeals Court.


Steven J. Rappaport for the defendant.
Howard P. Blatchford, Jr., Assistant District Attorney, for
the Commonwealth.


LENK, J.  The defendant pleaded guilty to possession of a

large capacity feeding device, in violation of G. L. c. 269,

§ 10 (m), as well as carrying a firearm without a license and

related offenses.  As relevant here, the defendant was

sentenced, over the Commonwealth's objection, to a term of from one to two and one-half years' imprisonment following his conviction under G. L. c. 269, § 10 (m). In a motion for reconsideration, the Commonwealth sought a sentence of at least two and one-half years. The judge then reported the following question to the Appeals Court:

> "May a defendant who has been convicted of possession of a large capacity feeding device, in violation of [G. L. c. 269, § 10 (m)], lawfully be sentenced to State [p]rison for not less than one year nor more than two and one-half years?"

See Mass. R. Crim. P. 34, as amended, 442 Mass. 1501 (2004). We transferred the case to this court on our own motion, and now answer the reported question, "Yes."

1. Background. a. Facts. The indictments arose from an incident in June 2015, in which the defendant brandished a gun at another driver and then drove off before police arrived. Sergeant Marisol Nobrega of the Lowell police department responded to a report of the incident. Based on a general description of the man and the vehicle involved, she located and arrested the defendant. Under a floor mat in the defendant's vehicle, police found a firearm with one round in the chamber and a large capacity (twelve-shot) feeding device attached. The defendant did not have a license to possess a firearm in Massachusetts.

b.  Prior proceedings.  In December 2015, the defendant was indicted on charges of possession of a large capacity feeding device, G. L. c. 269, § 10 (m) (count 1); possession of a firearm without a license, G. L. c. 269, § 10 (a) (count 2); possession of a loaded firearm, G. L. c. 269, § 10 (n) (count 3); and possession of ammunition without a firearm identification card (FID), G. L. c. 269, § 10 (h) (count 4). Following his guilty pleas, he was sentenced to a term of from one to two and one-half years in State prison on count 1; eighteen months in a house of correction on count 2, concurrent with count 1; and one day in a house of correction on count 3, from and after the sentence on count 2 and concurrent with count 1.  Count 4 was placed on file.

2.  Discussion.  General Laws c. 269, § 10 (m), provides, in relevant part:

> "[A]ny person not exempted by statute who knowingly has in his possession, or knowingly has under his control in a vehicle, a large capacity weapon or large capacity feeding device therefor who does not possess a valid Class A or Class B license to carry firearms . . . shall be punished by imprisonment in a [S]tate prison for not less than two and one-half years nor more than ten years.  The possession of a valid firearm identification card issued under [§] 129B shall not be a defense for a violation of this subsection; provided, however, that any such person charged with violating this paragraph and holding a valid firearm identification card shall not be subject to any mandatory minimum sentence imposed by this paragraph.  The sentence imposed upon such person shall not be reduced to less than one year, nor suspended, nor shall any person convicted under this subsection be eligible for probation, parole, furlough, work release or receive any deduction from his

sentence for good conduct until he shall have served such minimum term of such sentence . . . . Prosecutions commenced under this subsection shall neither be continued without a finding nor placed on file."

The Superior Court judge who reported this case aptly characterized this imperfect statute as "vexing." The Appeals Court in separate opinions observed that it was "no grammatical paragon," Commonwealth v. Semegen, 72 Mass. App. Ct. 478, 480 (2008), and branded it as "confusing," after having "caused courts some consternation." Commonwealth v. Lindsey, 72 Mass. App. Ct. 485, 493 (2008), cert. denied, 556 U.S. 1183 (2009). We cannot disagree.

Looking first at the ordinary meaning of the statutory language, Foss v. Commonwealth, 437 Mass. 584, 586 (2002), as we do to discern the Legislature's intent in enacting it, Commonwealth v. Morgan, 476 Mass. 768, 777 (2017), citing Commonwealth v. Peterson, 476 Mass. 163, 167 (2017), we see that the first provision states that "any person" convicted under it "shall be punished by imprisonment in a [S]tate prison for not less than two and one-half years nor more than ten years." G. L. c. 269, § 10 (m). The second provision in effect then creates two categories of felon: those who do (FID-card-holding felons) and those who do not hold valid FID cards (non-FID-card-holding felons). Those who do "shall not be subject to any mandatory minimum sentence imposed by this paragraph." Id.

So far so good; if the paragraph ended there, the two provisions might readily be reconciled, as our case law would permit us to view the sentencing range of "not less than two and one-half years nor more than ten years," id., as calling for a mandatory minimum sentence of two and one-half years applicable to "any person" other than a valid FID card holder.[1]  See Commonwealth v. Brown, 431 Mass. 772, 776 (2000); Commonwealth v. Claudio, 418 Mass. 103, 109 (1994).

Of course, the paragraph has three, not two provisions, the third one bearing yet more of the hallmarks of a mandatory minimum sentence than the first.  See Commonwealth v. Jackson, 369 Mass. 904, 905 n.1, 916-920 (1976) (construing language comparable to that in third provision of G. L. c. 269, § 10 [m], as creating mandatory minimum sentence).  See also Commonwealth v. Cowan, 422 Mass. 546, 548-549 (1996).  This is the locus of the conundrum.  See Commonwealth v. Pon, 469 Mass. 296, 302 (2014) ("Where the words of the statute are ambiguous, we strive to make it an effectual piece of legislation in harmony with common sense and sound reason and consistent with legislative intent" [quotation and citation omitted]).  See also Morgan, 476

---

[1] Insofar as it is extremely unlikely that the Legislature meant an FID card to act as a "get out of jail free" card, we take it that a sentencing judge, to the extent legally permissible, would have discretion to sentence an FID-card-holding felon to a sentence ranging presumably from probation to no more than ten years in State prison.

Mass. at 777, citing 2A N.J. Singer & S. Singer, Statutes and
Statutory Construction § 46:5 (7th ed. rev. 2014) ("We do not
confine our interpretation to the words of a single section").

The third provision of G. L. c. 269, § 10 (m), states that
"[t]he sentence imposed upon such person shall not be reduced to
less than one year, nor suspended, nor shall any person
convicted under this subsection be eligible for probation,
parole, furlough, work release or receive any deduction from his
sentence for good conduct until he shall have served such
minimum term of such sentence."  "Such person" arguably could
mean one of the felons holding FID cards referred to in the
second provision, but this would be nonsensical.  See G. L.
c. 269, § 10 (m).  To the extent that the third provision
properly is deemed a mandatory minimum sentence, felons holding
FID cards are not subject to such a sentence by virtue of the
second provision.[2]  Thus, if the third provision is a mandatory
minimum sentence, "such person" refers to "any person," namely,

---

[2] Even if the third provision were not viewed as setting
forth a mandatory minimum sentence, it would not make sense to
say "such person" refers to FID card holders while the first
provision and its term "any person" refers to only non-FID-card
holders.  That would mean that only FID card holders, and not
their non-FID-card-holding counterparts, would be subject to the
restrictions set out in the third provision, namely, no
eligibility for probation, parole, or furlough, or to receive
good conduct credits until after having served a term of at
least one year of incarceration in State prison.  This would
contravene the legislative intent to treat FID card holders
favorably, as set forth in the second provision.

the same non-FID-card-holding felons to whom the first provision also applies. The issue turns on whether the first and third provisions each provide for mandatory minimum sentences, albeit different ones, each applicable to the same non-FID-card-holding felons.

It would be considerably less daunting a task were we to regard either the first or the third provision as not calling for a mandatory minimum sentence, since the clear minimum sentence then would be either two and one-half years or one year. But we have little doubt that both the first and third provisions call for mandatory minimum sentences that are, by virtue of the second provision, applicable only to non-FID-card holders.[3] No case of which we are aware has a statute containing

---

[3] It is true, however, that in some cases, we have determined that, absent the word "mandatory," statutory language cannot impose a mandatory minimum sentence that is not subject to judicial discretion. See Commonwealth v. Hines, 449 Mass. 183, 191 (2007) (rejecting contention that statute imposes mandatory minimum prison sentence of five years in absence of word "mandatory"); Commonwealth v. Lightfoot, 391 Mass. 718, 718-719, 721 (1984) (declining to interpret statutory language that judge "shall" impose five-year sentence and $5,000 fine as precluding judicial discretion in absence of word "mandatory"); note 4, infra. See also Boston v. Quincy Mkt. Cold Storage & Warehouse Co., 312 Mass. 638, 646-647 (1942), quoting Swift v. Registrars of Voters of Quincy, 281 Mass. 271, 276 (1932) ("The word 'shall' as used in statutes, although in its common meaning mandatory, is not of inflexible signification and not infrequently is construed as permissive or directory in order to effectuate a legislative purpose"). In none of these cases was there a minimum and maximum sentencing range set forth, as here.

both a provision setting out a full sentencing range -- here, a minimum of two and one-half years and maximum of ten years -- as required by G. L. c. 279, § 24, and a subsequent provision requiring a lesser but more stringent sentence to be served, without exception, in prison.[4]  Harmonizing the provisions in a

_____

In any event, if the first provision does not create a mandatory minimum sentence but the third provision does, the non-FID-card holder would be subject to the one-year mandatory minimum sentence of the third provision.  The FID card holder then would be subject to the sentencing range set forth in the first provision, but without any of the restrictions set forth in the third provision.  See note 2, supra.

[4] In Lightfoot, 391 Mass. at 718-719, we considered a statute that appeared to contain two different mandatory minimum sentences.  The first sentence of G. L. c. 272, § 7, which prohibited deriving support from a prostitute, mandated that a person convicted under it "shall be punished by imprisonment in the [S]tate prison for a period of five years and by a fine of [$5,000]."  The second provision set out a significantly shorter sentence that also appeared to be a mandatory minimum:  "[t]he sentence of imprisonment imposed under this section shall not be reduced to less than two years, nor suspended, nor shall any person convicted under this section be eligible for probation, parole, or furlough or receive any deduction from his sentence for good conduct or otherwise until he shall have served two years of such sentence."  Id.

We concluded that the words "shall be punished by imprisonment in the [S]tate prison for a period of five years and by a fine of [$5,000]" in the first provision did not create a mandatory minimum sentence that was not subject to a judge's discretion.  Lightfoot, 391 Mass. at 721.  We noted in that regard that the language did not include the word "mandatory." Id.  We determined further, however, that language in the second provision ("shall not be reduced to less than two years"), in conjunction with the requirement that the sentence not be "suspended, nor shall any person convicted under this section be eligible for probation, parole, or furlough or receive any deduction from his sentence for good conduct or otherwise until he shall have served two years of such sentence" did create a

manner that does not make any of the statutory language superfluous, that sees the statute as a whole without internal contradiction, and that renders the legislation consistent with common sense, all as the Legislature intended, is quite the job with this statute.  See Commonwealth v. Figueroa, 464 Mass. 365, 368 (2012), quoting DiFiore v. American Airlines, Inc., 454 Mass. 486, 491 (2009) ("Where possible, we construe the various provisions of a statute in harmony with one another, recognizing that the Legislature did not intend internal contradiction"); Commonwealth v. Woods Hole, Martha's Vineyard & Nantucket S.S. Auth., 352 Mass. 617, 618 (1967) ("[n]one of the words of a statute is to be regarded as superfluous, but each is to be given its ordinary meaning without overemphasizing its effect upon the other terms appearing in the statute" [citation omitted]).  See also Commonwealth v. Daley, 463 Mass. 620, 623-

---

mandatory minimum term of two years.  Id.  In conformance with the statutory mandate in G. L. c. 279, § 24, that a minimum and a maximum sentence must be imposed for all convictions under G. L. c. 272, § 7, we concluded that § 7 established a minimum sentence of two years and a maximum sentence of five years.  See Lightfoot, supra.

The language at issue in the third provision of G. L. c. 269, § 10 (m), with its requirement that the sentence "shall not be reduced" and its restrictions on parole, probation, furloughs, and good conduct credits until such minimum term has been served, is very similar to the second provision of G. L. c. 272, § 7.  Nonetheless, here, we are confronted with what appear to be two different mandatory minimum sentences and one maximum sentence.

624 (2012) (rejecting interpretation that would have rendered one word, "with," superfluous); Commonwealth v. Keefner, 461 Mass. 507, 511 (2012), quoting Bankers Life & Cas. Co. v. Commissioner of Ins., 427 Mass. 136, 140 (1998) (interpreting statute "so that effect is given to all its provisions, so that no part will be inoperative or superfluous").

The legislative history, while interesting, is only minimally helpful in resolving the issue at hand. General Laws c. 269, § 10, was enacted in 1906, see St. 1906, c. 172, and was amended in 1935 to reflect the Federal ban on fully automatic weapons contained in the National Firearms Act of 1934, see St. 1935, c. 290. Sixty years later, in 1994, the Federal Public Safety and Recreational Firearms Use Protection Act, also known as the Federal Assault Weapons Ban, was enacted.[5] In it, Congress defined the term "large capacity ammunition feeding device," and made the transfer and possession of such devices unlawful.[6] See 18 U.S.C. § 921(a)(31) (repealed in 2004 pursuant to sunset provision). In 1998, Massachusetts adopted a version

---

[5] Under that act, however, semiautomatic weapons were permissible, so the size of a weapon's magazine ultimately determined the impact of discharging it. See A. Winkler, Gunfight: The Battle Over the Right to Bear Arms in America 37 (2011).

[6] Feeding devices were much simpler to define, and easier to recognize on visual inspection, than the myriad types of firearms, legal and otherwise, that could be defined as "semiautomatic."

of the Federal weapons ban by adding G. L. c. 269, § 10 (m).
See St. 1998, c. 180, § 70.

Contemporaneously with these Federal and State efforts to
keep firearms out of the hands of unsuitable individuals, in
1993, the Legislature enacted the "truth-in-sentencing" act.
See St. 1993, c. 432. That comprehensive act was intended to
ensure that defendants actually served at least the minimum
terms of imprisonment to which they were sentenced.[7] Presented
as a "get tough on crime" bill, the most significant and widely
discussed provision of the truth-in-sentencing act was to
eliminate so-called "Concord" sentences, which were intended to
allow rehabilitation for young, first-time offenders.[8] See
Brown, 431 Mass. at 778-779; St. 1993, c. 432, § 20; State House

---

[7] Then Governor William Weld introduced the bill on June 3,
1993, following public outrage at the release from prison of a
former professor, who admitted to having bludgeoned a prostitute
to death, after having served only nine years of his twenty-year
sentence. See State House News Service, June 3, 1993; 1993
House Doc. 5682 (1994).

[8] Concord sentences allowed judges to sentence someone to a
lengthy term, for example of twenty years, and order that the
sentence be served at the Massachusetts Correctional Institution
at Concord, where the person could be released on parole after
approximately eighteen months. See State House News Service,
Apr. 6, 1994. Where a defendant sentenced to the same term
served the sentence at a different State prison, on the other
hand, the defendant would be eligible for parole after twelve
years. See Commonwealth v. Brown, 431 Mass. 772, 778-779
(2000); St. 1993, c. 432, § 20; State House News Service, June
3, 1993. Thus, by their terms, every Concord sentence
effectively established a form of split sentence.

News Service, June 8, 1993.  The truth-in-sentencing act also modified provisions that had made prison inmates eligible for parole after having served two-thirds of their sentences, so that they were not eligible for parole until having served the entire minimum terms of their sentences; removed statutory good time credits; and eliminated split prison sentences.  See Commonwealth v. Azar, 444 Mass. 72, 78-79 (2005); Brown, supra at 778 n.9; G. L. c. 127, § 133, as appearing in St. 1993, c. 432, § 11.

Given that G. L. c. 269, § 10 (m), was enacted only a few years after the truth-in-sentencing act, the Legislature could not have intended to establish a possible split sentence for everyone convicted under G. L. c. 269, § 10 (m).  Otherwise put, the Legislature would not have intended a sentence with one year to serve (the minimum set forth in the third provision), and the remainder suspended for one and one-half years (the remaining term after subtracting one year from the minimum two and one-half years in the first provision).  Indeed, the language in the third provision, mandating that the sentence "imposed upon such person shall not be reduced to less than one year, nor suspended," clarifies that a split sentence was not intended.

Although the statutory language remains somewhat opaque, we think essentially what the Legislature intended to do was to establish, for non-FID-card holders, a lower end of the

sentencing range of from one to two and one-half years, with at least one year to serve, in State prison.[9]  FID card holders were intended to be sentenced quite differently, for reasons that are not made clear, although inferably to recognize that those who possess a valid FID card have at least attempted to be more compliant with the gun laws.  The language of the second provision suggests that such attempted compliance should count

---

[9] The Commonwealth argues, as an extension of Commonwealth v. Semegen, 72 Mass. App. Ct. 478, 480-481 (2008), that the one-year period in the third provision must apply to FID card holders only, and sentences for non-FID-card holders may not be less than the two and one-half years set out as the lowest of the sentencing range in the first provision.  But see note 3, supra.  The Commonwealth also contends in this regard that sentencing someone to a shorter period of imprisonment for possession of a high capacity feeding device (one year) than for possession of an ordinary firearm (eighteen months) produces an absurd result.

We note first that, when G. L. c. 269, § 10 (m), was enacted in 1998, the minimum sentence for possession of a firearm, G. L. c. 269, § 10 (a), was one year.  Eight years later, G. L. c. 269, § 10 (a), was amended such that the mandatory minimum sentence changed from one year to eighteen months.  St. 2006, c. 48, § 5.  None of the other minimum sentences for firearms offenses was increased.  This amendment to § 10 (a), however, cannot be used to inform as to the Legislature's intent in enacting § 10 (m) eight years earlier.  Moreover, as possession of a feeding device alone cannot result in a shooting, a mandatory minimum sentence for a feeding device that would be almost twice the length of the minimum sentence for possession of a firearm also could appear anomalous.  In any event, here, an individual unlawfully in possession of a firearm capable of accepting a high capacity feeding device could be charged separately for possession of that firearm, in addition to charges for possession of the feeding device.  We discern no absurdity.

at sentencing, even though not as a defense to the felony charged.

Moreover, to the extent that the statute as it affects non-FID-card holders, like the defendant, is ambiguous as to the minimum sentence it mandates, the rule of lenity leads to the same conclusion:  the lower end of the sentencing range is from one to two and one-half years, with at least one year to serve, in State prison.  See Commonwealth v. Pagan, 445 Mass. 161, 167 (2005), quoting Commonwealth v. Kerr, 409 Mass. 284, 286 (1991) ("It is a well-established proposition that criminal statutes are to be construed narrowly.  We have stated that '[w]e must resolve in favor of criminal defendants any reasonable doubt as to [a] statute's meaning'").[10]

3. Conclusion.  We answer the reported question, "Yes," a defendant who has been convicted of possession of a large capacity feeding device, in violation of G. L. c. 269, § 10 (m), lawfully may be sentenced to State prison for not less than one year nor more than two and one-half years.

The matter is remanded to the Superior Court for further proceedings consistent with this decision.

---

[10] To the extent that our decision conflicts with Commonwealth v. Lindsey, 72 Mass. App. Ct. 485, 493 (2008), cert. denied, 556 U.S. 1183 (2009), and Semegen, 72 Mass. App. Ct. at 480, those cases are overruled.  Neither interpreted the entirety of the statute as we do here.

<u>So ordered</u>.