NOTICE:  All slip opinions and orders are subject to formal revision and are superseded by the advance sheets and bound volumes of the Official Reports.  If you find a typographical error or other formal error, please notify the Reporter of Decisions, Supreme Judicial Court, John Adams Courthouse, 1 Pemberton Square, Suite 2500, Boston, MA, 02108-1750; (617) 557-1030; SJCReporter@sjc.state.ma.us

SJC-13792
SJC-13796


COMMONWEALTH  vs.  STEFANOS PSIKARAKIS.

COMMONWEALTH  vs.  MAURICE SMITH.



Middlesex.     December 3, 2025. - March 20, 2026.

Present:  Budd, C.J., Gaziano, Kafker, Wendlandt, Georges, Dewar, & Wolohojian, JJ.


Firearms.  Practice, Criminal, Sentence.  Statute, Construction.



Indictments found and returned in the Superior Court Department on August 17, 2022.

A motion to revise and revoke sentence was heard by Catherine H. Ham, J.

The Supreme Judicial Court on its own initiative transferred the case from the Appeals Court.


Indictments found and returned in the Superior Court Department on December 5, 2023.

A motion to revise and revoke sentence was heard by Patrick M. Haggan, J.

The Supreme Judicial Court on its own initiative transferred the case from the Appeals Court.

Chia Chi Lee, Special Assistant District Attorney (David Yasinovsky, Assistant District Attorney, also present) for the Commonwealth.
Timothy St. Lawrence for Stefanos Psikarakis.
Keith Durden for Maurice Smith.

GAZIANO, J.  We return to sentencing under G. L. c. 269, § 10 (m) (§ 10 [m]), which prohibits the unlawful possession of a large capacity firearm or feeding device.  In Commonwealth v. Rodriguez, 482 Mass. 366, 373-374 (2019), the court examined the minimum end of an indeterminate sentence and held that an individual convicted of a § 10 (m) violation "lawfully may be sentenced to State prison for not less than one year nor more than two and one-half years."  The issue here is the maximum end of a § 10 (m) indeterminate sentence and, specifically, whether a judge may sentence a defendant convicted of violating § 10 (m) to a maximum term of one year and one day.  In the two cases before us, the defendants, Stefanos Psikarakis and Maurice Smith, after pleading guilty to violating § 10 (m), were each sentenced to from one year to one year and one day in State prison.[1]

We hold that the sentencing range for a violation of § 10 (m) requires a maximum term of incarceration of at least two and one-half years.  Accordingly, as the maximum term of

---

[1] Although the two appeals are not consolidated, they were paired for oral argument and are addressed in a single opinion because they raise essentially identical questions of law.

each defendant's indeterminate sentence is less than two and one-half years, the defendants' sentences are both unlawful.

Background. 1. Psikarakis. In March 2022, a witness provided police with a video recording showing Psikarakis in possession of an AR-15 style rifle while inside his Woburn home. The witness further informed officers that Psikarakis had been building these weapons and provided police with additional images of firearms in the defendant's home in June 2022. While executing a search warrant a few days later at Psikarakis's residence, police found four AR-15 style rifles, three pistols, dozens of magazines with thirty-round capacity, and over 1,000 rounds of ammunition.

On August 17, 2022, a grand jury indicted Psikarakis for multiple firearm-related offenses, including four counts of unlawful possession of a large capacity firearm and one count of unlawful possession of a large capacity feeding device, in violation of § 10 (m); and three counts of unlawful possession of a firearm and one count of unlawful possession of ammunition, in violation of G. L. c. 269, § 10 (h). At a July 25, 2024, plea conference, a Superior Court judge indicated that, as to the § 10 (m) charges, she would accept Psikarakis's recommendation of a State prison sentence of from one year to one year and one day. The Commonwealth maintained that § 10 (m) requires a maximum sentence of at least two and one-half years.

Psikarakis pleaded guilty to all the charges on July 31, 2024. The judge, over the Commonwealth's objection, sentenced Psikarakis on the § 10 (m) convictions to from one year to one year and one day in State prison.[2] She also sentenced Psikarakis to a three-year term of probation on the remaining offenses. That same day, as to the § 10 (m) sentence, the prosecutor moved to revise and revoke an illegal sentence. See Mass. R. Crim. P. 29 (a) (1), as appearing in 489 Mass. 1503 (2022). The judge denied the Commonwealth's motion by margin endorsement. She concluded that

> "Rodriguez clearly states that a legal sentence of [§ 10 (m)] is '[S]tate prison for not less than one year nor more than two and one-half years.' . . . This [c]ourt's sentence of [from] one year to one year and [one] day in [S]tate prison is consistent with the statute ('The sentence imposed upon such person shall not be reduced to less than one year . . .') and Rodriguez."

---

[2] During the plea hearing, the judge offered the prosecutor the option of "hold[ing] off" on sentencing "for an appeal." The prosecutor, indicating that he had "moved for sentencing," declined. We note that rule 29 provides the Commonwealth with a narrow right to move to revise or revoke an illegal sentence "within sixty days of [the] disposition," and thereafter, the Commonwealth may appeal from a "final order" on the motion. Mass. R. Crim. P. 29 (a) (1), (e), as amended, 489 Mass. 1503 (2022). See Reporter's Notes to Rule 29 (a) (2016), Massachusetts Rules of Court, Rules of Criminal Procedure, at 201 (Thomson Reuters 2025) (Commonwealth's authority to file rule 29 motion is "narrow"). The Commonwealth's ability to appeal prior to imposition of the sentence, given this available alternate remedy, is less than certain. See Commonwealth v. Beverly, 485 Mass. 1, 5 (2020) (discussing interlocutory review of illegal sentence following amendments to rule 29 permitting Commonwealth's appeal). See also id. at 22-23 (Lenk, J., concurring).

Thereafter, the Commonwealth appealed, and the case entered in the Appeals Court.  We transferred the case to this court on our own motion.

2.  Smith.  In the early morning of April 14, 2023, police responded to a fight between Smith and his girlfriend.  The victim informed responding officers that Smith had grabbed her by her neck and, when she resisted, ripped her shirt off her body.  During a search incident to his arrest, officers found a loaded Glock 26 pistol in Smith's pocket equipped with a partially loaded fifteen-round magazine.

On December 5, 2023, a grand jury returned indictments charging Smith with unlawful possession of a large capacity firearm, in violation of § 10 (m) (count one); unlawful possession of a firearm, in violation of G. L. c. 269, § 10 (a) (count two); unlawful possession of a loaded firearm, in violation of G. L. c. 269, § 10 (n) (count three); and assault and battery on a family or household member, in violation of G. L. c. 265, § 13M (count four).  The same judge who sentenced Psikarakis accepted Smith's guilty pleas as to all four charges on September 30, 2024.  During the plea colloquy, she informed Smith that she intended to sentence him to a term of from one year to one year and one day in State prison on count one (§ 10 [m] sentence), a concurrent term of eighteen months in a house of correction on count two, and a consecutive probationary

term of one year on counts three and four.  The Commonwealth objected to the § 10 (m) sentence and filed a motion to revise and revoke an illegal sentence.  At Smith's request, the case was continued for sentencing to December 2, 2024.

On December 2, a different judge imposed the above-mentioned sentences (sentencing judge).  The sentencing judge denied the Commonwealth's motion to revise and revoke both orally on that day -- noting that its rights were preserved -- and by margin endorsement on December 4.  The Commonwealth appealed from the denial.  After the case was entered in the Appeals Court, we transferred it to this court on our own motion.

Discussion.  1.  Section 10 (m) maximum term.  A brief discussion of indeterminate sentencing lends context to our inquiry into the permissible maximum term for a violation of § 10 (m).  Under G. L. c. 279, § 24 (§ 24), a judge imposing a State prison sentence is "not to fix the specific term of imprisonment" (a determinate sentence), but instead must "fix a maximum and a minimum term of imprisonment" (an indeterminate sentence) within the bounds of the statutory punishment. Commonwealth v. Brown, 431 Mass. 772, 774 (2000).  See Commonwealth v. Rossetti, 489 Mass. 589, 595-596 (2022).  "[A]s used in § 24, 'minimum term' refers to the length of time imposed as the lower end of a sentence expressed as a range; it

indicates the shortest period of time to which the offender is sentenced."  Id.  In general, a prisoner is not eligible for parole before serving the minimum term of imprisonment, reduced by earned good conduct credits.  See Commonwealth v. Sharma, 488 Mass. 85, 87 (2021); Brown, supra.  See also G. L. c. 127, § 133.  The maximum term "is just that, the maximum amount of time that [a] prisoner will serve in prison" -- that is, the upper end of a sentence expressed as a range -- if not granted parole (citation omitted).  Brown, supra.

In determining the permissible maximum term of the defendants' sentences, we consider the interplay between two sentencing provisions within § 10 (m) applicable to violators, such as the defendants, not in possession of valid firearm identification (FID) cards.[3]  Rodriguez, 482 Mass. at 368-369.

_____

[3] The version of G. L. c. 269, § 10 (m), as amended through St. 2014, c. 284, § 91, in effect at the time of the defendants' 2022 and 2023 offenses, provided, in part:

"Notwithstanding the provisions of paragraph (a) or (h), any person not exempted by statute who knowingly has in his possession, or knowingly has under his control in a vehicle, a large capacity weapon or large capacity feeding device therefor who does not possess a valid license to carry firearms issued under [G. L. c. 140, § 131 or 131F], except as permitted or otherwise provided under this section or [G. L. c.] 140, shall be punished by imprisonment in a state prison for not less than two and one-half years nor more than ten years.  The possession of a valid firearm identification card issued under [§] 129B shall not be a defense for a violation of this subsection; provided, however, that any such person charged with violating this paragraph and holding a valid firearm

The first provision states that any person convicted under it shall be punished by "imprisonment in a [S]tate prison for not less than two and one-half years nor more than ten years." G. L. c. 269, § 10 (m).  The second provision states:  "The sentence imposed upon such person shall not be reduced to less than one year, nor suspended, nor shall any person convicted under this subsection be eligible for probation, parole, furlough, work release or receive any deduction from his sentence for good conduct until he shall have served such minimum term of such sentence . . . ."  Id.  The two sentencing provisions, we noted in Rodriguez, supra at 369-370, "provide

---

identification card shall not be subject to any mandatory minimum sentence imposed by this paragraph.  The sentence imposed upon such person shall not be reduced to less than one year, nor suspended, nor shall any person convicted under this subsection be eligible for probation, parole, furlough, work release or receive any deduction from his sentence for good conduct until he shall have served such minimum term of such sentence; provided, however, that the commissioner of correction may, on the recommendation of the warden, superintendent or other person in charge of a correctional institution or the administrator of a county correctional institution, grant to such offender a temporary release in the custody of an officer of such institution for the following purposes only:  (i) to attend the funeral of a spouse or next of kin; (ii) to visit a critically ill close relative or spouse; or (iii) to obtain emergency medical services unavailable at such institution. Prosecutions commenced under this subsection shall neither be continued without a finding nor placed on file.  The provisions of [G. L. c. 276, § 87,] relative to the power of the court to place certain offenders on probation shall not apply to any person [eighteen] years of age or over charged with a violation of this section."

for mandatory minimum sentences, albeit different ones."  The statute was therefore ambiguous.  See id. at 369-370, 374.

To harmonize the mandatory minimums within these two provisions "in a manner that [did] not make any of the statutory language superfluous," and applying the rule of lenity in the defendant's favor, we concluded that the Legislature intended to establish "a lower end of the sentencing range of from one to two and one-half years, with at least one year to serve, in State prison."  Rodriguez, 482 Mass. at 370-371, 373-374.  As a result, a sentencing judge may lawfully sentence a defendant convicted of violating § 10 (m) to State prison for a minimum term of from one year to two and one-half years.  Id. at 374.

With that background in mind, we now turn to the issue in these cases -- the maximum term for a violation of § 10 (m).  As with any other statute, we are required to construe § 10 (m) in a manner that gives effect "to all its provisions, so that no part will be inoperative or superfluous" (citation omitted).  Commonwealth v. Dossantos, 472 Mass. 74, 79 (2015).  See Commonwealth v. Fleury, 489 Mass. 421, 427 (2022) ("[a] fundamental and long-standing principle of statutory interpretation [is] that we must strive to give effect to each word of a statute so that no part will be inoperative or superfluous" [quotation and citation omitted]).  Given this rule, we agree with the Appeals Court's recent conclusion in

Commonwealth v. DaSilva, 105 Mass. App. Ct. 732, 738 (2025), that "[t]o permit judges to impose sentences with both the minimum and maximum terms falling completely outside of the full sentencing range set forth in the first [provision of § 10 (m)] would render the 'not less than two and one-half years' language of that [provision] null."

On appeal, Psikarakis argues that under the rule of lenity, ambiguities in the statutory punishments (imprisonment for not less than two and one-half years in the first provision and a one-year mandatory sentence in the second provision) must be resolved in his favor. He urges the court to "simply ignore" the first provision's reference to "imprisonment in a [S]tate prison for not less than two and one-half years," G. L. c. 269, § 10 (m), and "let the Legislature make any necessary clarification." This would, he contends, avoid a "strained" reading of the statute and preserve judicial sentencing discretion.

Psikarakis's suggested application of the rule of lenity goes too far. The rule of lenity dictates that a court construe an ambiguous criminal statute for the benefit of the defendant, with any "rational doubt" as to the statute's meaning being resolved in favor of the accused (citation omitted). Commonwealth v. Morrison, 494 Mass. 763, 771 (2024). While we resolve statutory ambiguities in a defendant's favor, the rule

of lenity does not permit the court to "simply ignore" text that does not support a more lenient interpretation.  See Commonwealth v. Mattier (No. 2), 474 Mass. 261, 268 n.11 (2016) ("all reasonable interpretations of an ambiguous statute are resolved in favor of the defendants" [emphasis added]).  See also Commonwealth v. Harding, 485 Mass. 843, 850 (2020) (court construed ambiguous sex offender registration requirement in "most reasonable and administrable" fashion consistent with rule of lenity).  Thus, we cannot sidestep entirely that portion of § 10 (m) that requires a defendant to serve not less than two and one-half years in State prison.  The maximum term of a defendant's sentence under § 10 (m) therefore must be at least two and one-half years.

2. Rodriguez decision.  Next, we address the Commonwealth's argument that Rodriguez, 482 Mass. 366, was wrongly decided.  The Commonwealth requests that we reconsider the conclusion that § 10 (m) is ambiguous.  In the Commonwealth's view, the sentencing provisions easily are harmonized because the second provision (precluding reduction of the sentence to less than one year) concerns the subsequent "administration" of a sentence under § 10 (m) when factoring in earned good conduct credit, not the initial imposition of the sentence.  The Commonwealth argues that for non-FID-card holders, § 10 (m), properly understood, "requires a mandatory

minimum sentence of two and [one-]half years," and that the lowest legal sentencing range that may be imposed for violating the statute is a term of from two and one-half years to two and one-half years and one day.

We decline to revisit our interpretation of § 10 (m) in Rodriguez. It is well settled that "[t]he principle of stare decisis is particularly weighty where, as here, the Legislature has declined to exercise its authority to overturn the court's interpretation of a statute" (quotations and citation omitted). Chapman, petitioner, 482 Mass. 293, 306 (2019). See Theisz v. Massachusetts Bay Transp. Auth., 495 Mass. 507, 521 (2025) ("Stare decisis carries enhanced force in connection with our construction of a statute, where our decision effectively become[s] part of the statutory scheme" [quotations and citation omitted]). In fact, five years after we decided Rodriguez, the Legislature amended § 10 (m) and did not see fit to undo our interpretation of the penalty provisions. See St. 2024, c. 135, § 125 (amending § 10 [m] to replace "weapon" with "firearm").

The Commonwealth has "identified no compelling reason to depart" from our interpretation of § 10 (m) in Rodriguez. Theisz, 495 Mass. at 521. In Rossetti, 489 Mass. at 606-609, we distinguished § 10 (m) from other sentencing schemes by noting that the "vexing" nature of § 10 (m) led the Rodriguez court to

its conclusion (citation omitted).[4]  The Rossetti court added, "The court's decision to depart from a plain language interpretation in Rodriguez . . . was required because other language in § 10 (m) rendered unclear the meaning of the [first provision of § 10 (m), discussed supra]."  Id. at 608.[5]

---

[4] The Commonwealth points out that other statutes have similar sentencing provisions.  See, e.g., G. L. c. 90, § 24G (a) (person convicted of motor vehicle homicide while under influence of alcohol or drugs "shall be punished by imprisonment in the [S]tate prison for not less than [two and one-half] years nor more than [fifteen] years . . . or by imprisonment in a jail or house of correction for not less than [one] year nor more than [two and one-half] years . . . .  The sentence imposed upon such person shall not be reduced to less than [one] year . . ."); G. L. c. 90B, § 8A (1) (person convicted of recklessly or negligently operating vessel while under influence of alcohol or drugs causing bodily injury "shall be punished by imprisonment in the [S]tate prison for not less than two and one-half years nor more than ten years . . . .  The sentence imposed upon such person shall not be reduced to less than six months . . ."); G. L. c. 272, § 7 (person convicted of deriving support from prostitution "shall be punished by imprisonment in the [S]tate prison for a period of five years . . . .  The sentence of imprisonment imposed under this section shall not be reduced to less than two years . . .").  This opinion, applying principles of stare decisis, does not extend beyond G. L. c. 269, § 10 (m).

[5] The logic of the dissent is infirm.  We track her opinion as follows.  First, the punishment established by the Legislature for a violation of § 10 (m), for non-FID-card holders, is a mandatory minimum term of two and one-half years with a maximum sentence of ten years.  Post at    .  A defendant is ineligible for parole, or other forms of release, prior to serving the minimum term of that sentence.  Id. at    .  Under that scheme, we note, a sentencing judge would be required to impose an indeterminate prison term of at least two and one-half years to two and one-half years and one day.  See, e.g., Commonwealth v. Ashford, 486 Mass. 450, 452 (2020) (defendant sentenced under armed career criminal enhancement to mandatory minimum sentence of not less than ten years and not more than

3.  Double jeopardy.  Finally, we conclude that principles

of double jeopardy do not bar resentencing Psikarakis.[6]  The

State may not increase a defendant's sentence once his or her

reasonable expectation of finality in the imposed sentence has

"crystallized."  Martin v. Commonwealth, 492 Mass. 74, 78

(2023), quoting Commonwealth v. Selavka, 469 Mass. 502, 513

(2014).  "This protection from governmental overreach . . . [is]

---

ten years and one day).  Second, we are bound by stare decisis
to follow Rodriguez.  Post at    .  Third, Rodriguez concerns
only the minimum term of an indeterminate sentence and has no
effect on the maximum term.  Id. at    .  It would seem that the
dissent, unbound by Rodriguez, would impose a maximum term
(faithful to the plain language of the statute) of imprisonment
for any term between two and one-half years and one day to ten
years.  Yet, the dissent asserts that the statute permits a
lesser maximum sentence of one year and one day.  Id. at    .
Thus, a mandatory term of incarceration of two and one-half
years, which the dissent acknowledges is prescribed by the
Legislature, disappears.

    [6] The defendants did not raise a double jeopardy argument in
their appellate briefs.  Smith had good reason.  In the plea
colloquy, the judge carefully advised Smith that the issue of a
lawful sentencing range for a violation of § 10 (m) was
unsettled, the Commonwealth would be appealing, and it was
possible that an appellate court would remand for resentencing.
See Commonwealth v. Selavka, 469 Mass. 502, 513 (2014), and
discussion infra.  There was no such colloquy in Psikarakis's
case.

    Psikarakis, at oral argument, and in a subsequent letter
filed pursuant to Mass. R. A. P. 16 (l), as appearing in 481
Mass. 1628 (2019), contended that principles of double jeopardy
preclude resentencing.  Thereafter, the Commonwealth filed a
postargument response.  Because the Commonwealth has had an
opportunity to address the double jeopardy implications of
resentencing, we exercise our discretion to address the issue.
See Commonwealth v. Gumkowski, 487 Mass. 314, 321 n.13 (2021).

required by principles of double jeopardy even where the defendant's sentence [is] 'illegal' insofar as the imposed sentence did not comply with the minimum sentence prescribed by the relevant statute for the offense of which the defendant was convicted."  Martin, supra.  In determining a defendant's legitimate expectation of finality, we examine various factors, including whether the original sentence was legal or illegal; the timeliness of a motion to revise or revoke; and whether the sentence has been fully served.  Commonwealth v. Ellsworth, 485 Mass. 29, 34 (2020).[7]

In Ellsworth, 485 Mass. at 32-33, for example, a judge unlawfully entered a continuance without a finding without imposing any terms and conditions or probation.  Although the Commonwealth filed a timely motion to revise or revoke, we held that principles of double jeopardy barred resentencing because of practical considerations, including the fact that two years had passed since the continuance without a finding and that, had

---

[7] We also noted in Ellsworth, 485 Mass. at 34, that the court may consider "whether a motion to stay the execution of the sentence was filed."  Id., citing Commonwealth v. Resende, 427 Mass. 1005, 1005 (1998).  Ellsworth and Resende each addressed the Commonwealth's failure to file a motion to stay a sentence pending appeal from continuances without a finding. See Ellsworth, supra at 31-32, 34; Resende, supra.  In the context of those cases, a decision by an appellate court "would have [had] no effect on the defendants' status" because the defendants had already served the probationary period of their sentences, and the cases had been dismissed.  Resende, supra at 1006.  See Ellsworth, supra at 34.

the judge imposed terms and conditions or probation, such terms would have been satisfied within a short period of time.  Id. at 34-35.  See Martin, 492 Mass. at 79-81 (double jeopardy principles barred resentencing where 177 days had passed since date that illegal sentence was imposed); Selavka, 469 Mass. at 513-515 (belated imposition of probation condition beyond sixty-day period set forth in Mass. R. Crim. P. 29 [a] violated principle of finality).

Here, the original sentence of from one year to one year and one day was illegal.  Further, the Commonwealth, in a plea conference and subsequent plea hearing, maintained that Rodriguez required a maximum term of at least two and one-half years in State prison.  After sentencing, the Commonwealth filed a motion to revise and revoke an illegal sentence the very same day that Psikarakis was sentenced -- well within the sixty-day time limit specified by Mass. R. Crim. P. 29 (a) (1) -- and immediately appealed from the denial thereof.  Contrast Martin, 492 Mass. at 79-80 ("Absent some action during this [sixty-day] window [under rule 29 (a)], the time for the appellate process has come to an end, and the defendant has a reasonable expectation of finality in the sentence, even an illegal one").  Cf. Reporter's Notes to Rule 29 (a) (2016), Massachusetts Rules of Court, Rules of Criminal Procedure, at 202 (Thomson Reuters 2025) (after sixty-day time limit under rule 29 [a] [1] has

lapsed, "any motion to revise or revoke an illegal sentence must come from the defendant under [Mass. R. Crim. P. 30 (a), as appearing in 435 Mass. 1501 (2001)], which would raise no double-jeopardy problems").  On the other side of the ledger, it appears that Psikarakis has already fully served his sentence of from one year to one year and one day.[8]  See Ellsworth, 485 Mass. at 34.

In the circumstances presented, we conclude that Psikarakis did not have a legitimate expectation of finality in the illegal sentence.  Compare Commonwealth v. Sanchez, 485 Mass. 491, 507 (2020) (defendant remains in continuing jeopardy from first prosecution through end of appellate process), with Selavka, 469 Mass. at 514-515 (double jeopardy protections precluded additional probation condition where "defendant had every reason to believe that his sentence would remain fixed; he could not have anticipated that the judge might revisit his initial sentenc[e]").  Accordingly, Psikarakis may be resentenced.

Conclusion.  For the foregoing reasons, as to each defendant's case, we reverse the denial of the Commonwealth's motion to revise and revoke, vacate any § 10 (m) sentence, and remand to the Superior Court for resentencing.

So ordered.

---

[8] At the time of sentencing, Psikarakis was credited with 368 days of time served.

WENDLANDT, J. (dissenting).  Because neither stare decisis nor our canons of construction require the court's novel construction of the phrase "for not less than two and one-half years" in G. L. c. 269, § 10 (m) (§ 10 [m]), as the minimum of the maximum sentence that a sentencing judge may impose, I dissent.

If I were writing on a tabula rasa, I would construe § 10 (m), which prohibits the unlawful possession of a large capacity firearm or feeding device, to require the following sentences, depending on whether the violator possessed a valid firearm identification (FID) card.  See Commonwealth v. Rodriguez, 482 Mass. 366, 366 (2019), citing G. L. c. 269, § 10 (m).

First, for violators who did not possess a valid FID card (non-FID-card holders), the sentencing judge must impose a mandatory minimum term of two and one-half years with a maximum sentence of ten years.  See G. L. c. 269, § 10 (m) (first provision, stating that offenders who are non-FID-card holders "shall be punished by imprisonment . . . for not less than two and one-half years nor more than ten years"); id. (second provision, distinguishing between non-FID-card holders and FID card holders and noting with respect to latter that "such person . . . shall not be subject to any mandatory minimum sentence").

Second, for FID card holders, the sentencing judge need not impose any mandatory minimum sentence; thus, a sentencing judge's discretion in sentencing FID card holders is governed by neither the two-and-one-half-year minimum term provided for non-FID-card holders nor the one-year mandatory minimum term set forth in the third provision, discussed infra.[1]  Id. (second provision, referring to offender who possessed valid FID card as "such person" and stating that "such person" "shall not be subject to any mandatory minimum sentence imposed by this paragraph").  If the sentencing judge determines to impose a sentence of incarceration for an FID card holder that exceeds one year, however, the "sentence imposed upon such person[2] shall not be reduced" to less than one year;[3] moreover, any

_____

[1] However, the maximum sentence for FID card holders is the same as non-FID-card holders, ten years.  G. L. c. 269, § 10 (m) (second provision exempts FID card holders only from "any mandatory minimum sentence" imposed by § 10 [m]).

[2] In Rodriguez, the court determined that "such person" referred to non-FID-card holders, reasoning that construing "such person" to refer to FID card holders would render the third provision inapplicable to non-FID-card holders altogether. Rodriguez, 482 Mass. at 369 n.2.  As discussed infra, this reasoning fails to consider that the third provision distinguishes between certain relief (reduction and suspension), which applies to "such person," and other relief (eligibility for probation, parole, furlough, work release or deduction for good conduct), which applies to "any person convicted under" § 10 (m).

[3] The operative words in the third provision of § 10 (m) -- "sentence imposed" on "such person" and "shall not be reduced" -- further indicate that this portion of the third provision

sentence of incarceration imposed (whether for one year or otherwise) shall not be suspended.[4] Id. (third provision, providing that sentence "imposed" on "such person," which is same language used to refer to FID card holders in second provision, "shall not be reduced to less than one year, nor suspended").

Third, for "any person convicted under" G. L. c. 269, § 10 (m), regardless of whether the person possessed a valid FID card, the third provision further provides that the person shall not "be eligible for probation, parole, furlough, work release

_____

applies specifically to the administration of the sentence for FID card holders, not to the discretion of the sentencing judge imposing it. See G. L. c. 127, §§ 129C (prisoners are eligible for deductions of sentence for "satisfactory conduct"), 129D ("Prisoners are eligible to earn . . . good conduct deductions . . . for participation in and completion of [certain] programs and activities . . ."), 133 (stating that "minimum term[s] of sentence may be reduced"). By contrast, this portion of the third provision does not apply to non-FID-card holders.

[4] Section 10 (m) provides further that "[p]rosecutions commenced under this subsection shall neither be continued without a finding nor placed on file." Moreover, § 10 (m) also strips the sentencing judge of the power, inter alia, to place an adult offender, regardless of whether the offender possessed a valid FID card, on probation. See G. L. c. 269, § 10 (m) ("The provisions of [G. L. c. 276, § 87,] relative to the power of the court to place certain offenders on probation shall not apply to any person [eighteen] years of age or over charged with a violation of this section"); G. L. c. 276, § 87 (empowering judge to "place on probation . . . any person before [him or her] . . . for such time and upon such conditions as [judge] deems proper . . . in any case after a finding or verdict of guilty"). Thus, regardless of whether the offender possessed a valid FID card, a sentencing judge may not sentence the offender to probation; the sentence imposed must be one of incarceration.

or receive any deduction from his sentence for good conduct until he shall have served such minimum term of such sentence." Id. Thus, the third provision requires that non-FID-card holders, as to whom the sentencing judge has no discretion to sentence for less than two and one-half years under the first provision, are not eligible for any forms of relief until the non-FID-card holder serves "such minimum term of such sentence" -- that is, the two-and-one-half-year mandatory minimum term provided in the first provision of § 10 (m). For FID card holders, the term imposed by the judge (which, as discussed supra, need not be one year or two and one-half years) cannot be reduced by the listed forms of relief to less than the minimum term imposed by the judge if the term is less than one year or to less than one year if the minimum term imposed by the judge is greater than one year.

Of course, I am not writing on a clean slate. Instead, in Rodriguez, we construed § 10 (m) to set forth two minimum terms, each applicable to non-FID-card holders: two and one-half years under the first provision and one year under the third provision. See Rodriguez, 482 Mass. at 368 (recognizing plain meaning of phrase "for not less than two and one-half years" as "calling for a mandatory minimum sentence of two and one-half years" applicable to non-FID-card holders); id. at 369-370 ("we have little doubt that both the first and third provisions call

for mandatory minimum sentences . . . applicable only to non-FID-card holders"); id. at 370 n.4 ("we are confronted with what appear to be two different mandatory minimum sentences and one maximum sentence" [emphasis added]).

The court concludes that stare decisis now ties our hands. But see Commonwealth v. Rossetti, 489 Mass. 589, 609-610 (2022) (concluding that prior case interpreting sentencing statute was "flawed" and, in part on that basis, declining to be bound by stare decisis).  "Stare decisis -- in English, the idea that today's [c]ourt should stand by yesterday's decisions -- is 'a foundation stone of the rule of law.'"  Id. at 623 (Wendlandt, J., dissenting), quoting Kimble v. Marvel Entertainment, LLC, 576 U.S. 446, 455 (2015).  Respecting it "'means sticking to some wrong decisions,' on the justification that 'it is usually more important that the applicable rule of law be settled than that it be settled right.'"  Rossetti, supra, quoting Kimble, supra.  "It 'promotes the evenhanded, predictable, and consistent development of legal principles, fosters reliance on judicial decisions, and contributes to the actual and perceived integrity of the judicial process.'"  Rossetti, supra, quoting Knick v. Scott, 588 U.S. 180, 222 (2019) (Kagan, J., dissenting).

Moreover, the principle of "[s]tare decisis 'carries enhanced force' in connection with our construction of a

statute, where a decision 'effectively become[s] part of the statutory scheme.'" Rossetti, 489 Mass. at 623 (Wendlandt, J., dissenting), quoting Kimble, 576 U.S. at 456. "This is because the Legislature is free to amend a statute where it concludes that our construction of its intent is wrong." Theisz v. Massachusetts Bay Transp. Auth., 495 Mass. 507, 521 (2025). Indeed, "when it comes to matters of statutory construction 'critics of our ruling can take their objections across the street, and [the Legislature] can correct any mistake it sees.'"[5] Id., quoting Kimble, supra.

But stare decisis means only that we do not upset prior decisions; it does not bind us to commit further errors in an attempt not to disturb a prior one. Nothing in our canons of construction or the rule of stare decisis requires us to double down on an erroneous construction.

Respectfully, this is what the court does today. It concludes that the language requiring a sentencing judge to sentence a non-FID-card holder "for not less than two and one-

---

[5] Since our decision in Rodriguez, the Legislature has revisited and amended other provisions of § 10 but notably declined to alter the relevant language in § 10 (m). See St. 2024, c. 135, §§ 114-127 (effective Oct. 2, 2024); St. 2025, c. 14, §§ 51, 52 (effective Aug. 5, 2025). See also Chapman, petitioner, 482 Mass. 293, 306 (2019), quoting Commonwealth v. Rivera, 445 Mass. 119, 128 (2005) ("The principle of stare decisis is 'particularly weighty' where, as here, 'the Legislature has declined to exercise its authority to overturn the court's interpretation of a statute'").

half years" refers to an apparently novel concept in sentencing -- a "range" of permissible maximum sentences.  Specifically, the court concludes that "for not less than two and one-half years" provides the lower end of the maximum sentencing "range" -- in mathematical terms, a mandatory minimum maximum.  Of course, this is inconsistent with the plain language of the statute that non-FID-card holders "shall be punished by imprisonment . . . for not less than two and one-half years nor more than ten years."  G. L. c. 269, § 10 (m).  If the Legislature intended the court's construction, one would have expected it to be clearer, especially in view of the novelty of the concept of a range of maximum sentences.

Our decision in Commonwealth v. Brown, 431 Mass. 772 (2000), is instructive.  There, the defendant was convicted of home invasion in violation of G. L. c. 265, § 18C, which provides that an offender "shall be punished by imprisonment in the [S]tate prison for life or for any term of not less than twenty years."  Brown, supra at 772 n.1, quoting G. L. c. 265, § 18C.  The defendant argued that the phrase "for any term of not less than twenty years" referred to the minimum of the maximum term, a construction we rejected as a "strained interpretation" that was "in direct conflict with the plain language of the statute."  Brown, supra at 775.  Had the Legislature intended to set a minimum maximum sentence, we

reasoned, "it presumably would have provided for it with some clarity." Id.

Instead, we read the phrase "not less than twenty years" to refer to the minimum sentence, a construction "supported by the plain language of the statute," especially when considered in view of the indeterminate sentencing statute, G. L. c. 279, § 24.[6] Id. Under the latter statute, a sentencing judge must set forth a minimum sentence and a maximum sentence -- that is, one term of years to be served at a minimum, and one term of years to be served at a maximum. See G. L. c. 279, § 24 ("the court shall . . . fix a maximum and a minimum term for which [the person convicted] may be imprisoned"). Thus, in Brown, we construed "for not less than twenty years" as the minimum

_____

[6] The indeterminate sentencing law provides:

"If a convict is sentenced to the state prison . . . the court shall not fix the term of imprisonment, but shall fix a maximum and a minimum term for which he may be imprisoned. The maximum term shall not be longer than the longest term fixed by law for the punishment of the crime of which he has [been] convicted, and the minimum term shall be a term set by the court, except that, where an alternative sentence to a house of correction is permitted for the offense, a minimum state prison term may not be less than one year."

G. L. c. 279, § 24. Today, the court crafts a new concept. It sets forth a range governing the maximum end. To be sure, this follows the Rodriguez decision insofar as it set forth the concept of a range governing the minimum end in order to harmonize the two provisions of § 10 (m) that the court determined governed the minimum sentence for non-FID-card holders.

sentence to be served before parole eligibility.  Brown, 431 Mass. at 775 n.7.  Accord Rossetti, 489 Mass. at 604 ("By its plain language . . . 'not less than five years' [in G. L. c. 6, § 178H (a) (2),] means precisely what it appears to say" such that "if a judge chooses to sentence a defendant to incarceration . . . , the minimum term of such sentence must be at least five years").

In reaching the opposite conclusion here, the court leans on the principle that the phrase "for not less than two and one-half years" needs to mean something; but the principle of statutory construction that counsels against superfluity does not authorize us to rewrite the statute to require a maximum term with a minimum maximum of no less than two and one-half years and a maximum maximum of no more than ten years.  The canon against surplusage is a tool used to decipher legislative intent; it is not absolute, "[a]nd it certainly does not require us to favor 'an unusual meaning that will avoid surplusage' over a more natural one."  Stanley v. Sanford, 606 U.S. 46, 56 (2025), quoting A. Scalia & B.A. Garner, Reading Law:  The Interpretation of Legal Texts 176 (2012).

In any event, the court's decision rests not on the canon of construction against rendering superfluous any words of the statute; instead, the decision is driven by a laudable attempt

to reconcile our decision in Rodriguez with the statutory text.[7] It construes the language "shall be punished by imprisonment . . . for not less than two and one-half years nor more than ten years" as setting a range of permissible maximum sentences, effectively rewriting the statute to read "shall be punished . . . to a maximum range for not less than two and one-half years nor more than ten years."  But these words, or similar ones, are not in the statute.  And we are not free to rewrite statutes, adding text to the words written by the Legislature, and perforce, we are not free to do so to harmonize our prior case law with the statutory text.  See Commonwealth v. Newberry, 483 Mass. 186, 195 (2019) ("we may not rewrite the . . . statute to contain language the Legislature did not see fit to include," and "[c]ourts may not read into a statute a provision that the Legislature did not enact, nor add words that the Legislature had an option to, but chose not to include" [quotation and citation omitted]); City Elec. Supply Co. v. Arch Ins. Co., 481 Mass. 784, 789 (2019) ("We do not read into the statute a provision which the Legislature did not see fit to put there,

---

[7] As we recognized in Rodriguez, 482 Mass. at 370-371, "[h]armonizing the provisions [of § 10 (m)] in a manner that does not make any of the statutory language superfluous, that sees the statute as a whole without internal contradiction, and that renders the legislation consistent with common sense, all as the Legislature intended, is quite the job with this statute."

whether the omission came from inadvertence or of set purpose" [citation omitted]).  See also 2A N.J. Singer & J.D. Shambie Singer, Statutes and Statutory Construction § 47:38, at 541-542 (7th ed. 2021 & Nov. 2025 update) ("Courts do not supply words to a statute where . . . an omission is not plainly indicated").  Nor does "logic" cure this infirmity in the court's reasoning.

Further, even if the court's "mandatory minimum maximum" construction were plausible (and it is stretching the English language to say that it is), the rule of lenity would require we reject such a construction.  See 2A N.J. Singer & J.D. Shambie Singer, supra at § 47:38, at 543 ("Courts are less likely to supply missing words or sentences to clarify ambiguous language in a penal statute, since penal statutes are strictly construed in favor of defendants").  "It is a well-established proposition that criminal statutes are to be construed narrowly" and "that '[w]e must resolve in favor of criminal defendants any reasonable doubt as to [a] statute's meaning'" (citation omitted).  Commonwealth v. Pagan, 445 Mass. 161, 167 (2005).  The ambiguity and difficulty in construing this statute is well documented.  See Rodriguez, 482 Mass. at 368 ("The Superior Court judge who reported this case aptly characterized this imperfect statute as 'vexing'"); Commonwealth v. Lindsey, 72 Mass. App. Ct. 485, 493 (2008), cert. denied, 556 U.S. 1183 (2009) ("General Laws c. 269, [§ 10 (m)], is a confusing statute

which has caused courts some consternation and we appreciate the trial judge's difficulty"); Commonwealth v. Semegen, 72 Mass. App. Ct. 478, 480 & n.3 (2008) ("Without question, this statute is no grammatical paragon"; "[w]e would be remiss if we failed to acknowledge the degree of difficulty presented to trial judges when called upon to interpret this statute").

The court concludes that the rule of lenity does not apply because no other construction of "for not less than two and one-half years" is plausible in view of our decision in Rodriguez. But we acknowledged in Rodriguez that the plain and ordinary meaning of "for not less than two and one-half years" referred to the minimum term of incarceration under the indeterminate sentencing law. See Rodriguez, 482 Mass. at 368 ("our case law would permit us to view the sentencing range of 'not less than two and one-half years nor more than ten years,' as calling for a mandatory minimum sentence of two and one-half years applicable to 'any person' other than a valid FID card holder" [citation omitted; emphasis added]). We reasoned that this clear meaning of the phrase was rendered ambiguous by the third provision setting a one-year minimum sentence to be served. Id. at 368-369. We did not suggest that the plain meaning of the phrase "for not less than two and one-half years" concerned the maximum term at all, let alone set the bottom end of the permissible maximum range. Our resolution of the ambiguity

between the first and third provisions of § 10 (m) in <u>Rodriguez</u> does not counsel in favor of the court's present construction, nor is it a reason to deviate from the rule of lenity.  In my view, the phrase "for not less than two and one-half years" as used in § 10 (m) does not relate to the upper end of the sentencing range at all, much less establish a mandatory minimum maximum.  Accordingly, I dissent.